No. 21,540.

B. F. ABMEYER, *Appellee*, V. THE GERMAN-AMERICAN STATE
BANK and THEODORE C. MUELLER, *Appellants*.

SYLLABUS BY THE COURT.

1 TRIAL—*Violation of Instructions by Jury—Duty of Court.* It is one
of the functions of the court to see that a trial is conducted properly
and that verdicts are returned in accordance with its instructions;
the court is not bound to receive a verdict based upon an obvious mis-
apprehension of the instructions.

2. SALE—*Fraudulent Representations—Special Findings—Judgment.* The
special findings examined, and held to be supported by evidence and to
be sufficient to sustain a judgment for damages for fraud and deceit
in inducing the plaintiff to purchase an interest in a business which
was of no value and in which one of the defendants was interested as
a partner at the time the representations were made, which fact was
concealed from plaintiff.

3. SAME — *Fraudulent Representations by President of Bank — Bank
Liable.* Where false representations are made by the president of a
bank to a customer of the bank whereby he is induced to part with his
money and purchase an interest in an insolvent business, the knowledge
of the president of the bank may be such as to bind the bank, not-
withstanding the fact that he acts also in his own interest.

4. SAME—*Fraudulent Transaction—Ratified by Bank.* Where, in such a
case, part of the proceeds of the fraudulent transaction is received
and retained by the bank after it has notice of the fraud, it will be held
to have ratified the acts of its president and to be estopped to deny his
agency.

5. SAME—*Reduction of Verdict by Court—No Error.* It is held, upon
the facts stated in the opinion, that no prejudice to the defendants
resulted from the action of the trial court in requiring the plaintiff
to accept the reduced amount of the verdict in order to avoid the
granting of a new trial.

6. *Pleadings—Amendment—Directing Verdict.* There was no abuse of
discretion in permitting the amendment of plaintiff's pleadings, nor
in refusing to direct a verdict upon the opening statement of plaintiff's
counsel.

Appeal from Shawnee district court; division No. 2; GEORGE
H. WHITCOMB, judge. Opinion filed July 6, 1918. Affirmed.

*Edwin D. McKeever,* and *A. E. Crane,* both of Topeka, for
the appellants.

*Otis Hungate, Clad Hamilton,* and *Clay Hamilton,* all of
Topeka, for the appellee.

The opinion of the court was delivered by

PORTER, J.: In an action to recover damages for fraud practiced upon him by the defendants, the plaintiff prevailed, and the defendants appeal. The petition upon which the case was tried alleged these facts: Plaintiff for a number of years had been a customer of the German-American State Bank; for twenty years he and its president, Mueller, had been close personal friends, and plaintiff had confidence in Mueller's business judgment and honesty. Plaintiff, having heard of an opportunity to make an investment in a certain business, went to the bank and inquired about it of Mueller, who advised him not to have anything to do with it, but told him that he knew of a business in which plaintiff could purchase an interest, and which he could recommend as a money-maker, a business carried on under the name of the Topeka Fruit and Produce Company, with an office near where the bank was located. He represented that the business was owned by George Christopher, and said that if he were not "tied up" he would go into it himself. He took Abmeyer to the office of the Produce Company. When they arrived Christopher was not there, but Mueller went into the private office and took from the drawers a book purporting to show the accounts and conditions, and certain envelopes in which were papers showing particular transactions of the business. These he explained to Abmeyer, stating he had originally prepared the system of bookkeeping for Christopher. Christopher came into the office about that time, and they all talked about the business and about the plaintiff purchasing an interest. Mueller took a prominent part in the conversation, and arrangements were made for Christopher to prepare a statement. A few days later Mueller brought Christopher to Abmeyer's farm, and he was handed a written statement of the business, showing commission accounts due amounting to $4,700. Mueller stated that there was no loss in the commission accounts, that they were payable every Monday. The statement showed assets of $5,200 in excess of liabilities. Mueller represented that he had no interest in the sale, and that what he did was because of his friendship for Abmeyer. He offered to make a loan for the bank on plaintiff's farm and personal property to enable him to

purchase an interest in the business. Plaintiff, relying upon and believing the written statement brought to him, and the statements and recommendations of Mueller, paid Christopher $3,000 for a half interest. Mueller was at that time a silent partner in the business carried on by Christopher, and the firm was indebted to the bank on notes amounting to $2,850, some of which were past due and the others rapidly maturing. The money plaintiff paid to Christopher was applied in taking up these notes.

Abmeyer and Christopher conducted the business for several months, Abmeyer at first devoting his attention to the outside business; but gradually it dawned upon him that the business was insolvent, and that it had been in that condition when he purchased. Upon complaining to Christopher, he discovered for the first time that Mueller had been interested in the business as a partner. Plaintiff then sold his interest to Christopher for $1,000, and brought this action asking $4,000 damages against Mueller and the bank. The bank filed an answer, verified by Mueller, as president, denying that the bank was interested in any manner in the transaction. Mueller also filed an answer for himself, denying that he had ever been a partner or had any interest in the business, or that he had received any benefit from the sale to the plaintiff.

The jury made special findings and returned a verdict in plaintiff's favor against Mueller for $150, and against the bank for $2,850. The court sent the jury back with additional instructions directing their attention to the instructions which limited the amount of the verdict against the bank to the sum actually received by it as the direct result of any alleged fraud, and to the instructions which charged that in case the jury found in plaintiff's favor, he would be entitled to recover against both defendants for the same amount, up to the sum actually received by the bank as a direct result of the fraud, and that if the facts and law warranted, the jury might return a verdict against Mueller for a greater amount than that found against the bank, but not for less. Shortly thereafter the jury returned a verdict for plaintiff against both defendants, assessing the damages against Mueller at $3,000 and against the bank at $2,850. It is insisted there are two verdicts, but there is only one real verdict; the court very properly refused to accept

Abmeyer v. Bank.

the first one returned, and it did not become a verdict until it was accepted. The court refused to accept it because it was manifestly contrary to the law and facts of the case, as well as contrary to the court's instructions. It showed that the jury believed from the evidence that plaintiff was entitled to recover from both defendants. Under the law of the case, about which there could have been no dispute, if both defendants were liable, Mueller's liability was necessarily as great as that of the bank; it might exceed that of the bank, but could not be less. It is always one of the court's functions to see that a trial is conducted properly, and that verdicts are returned in accordance with its instructions. The court is not bound to receive a verdict based upon an obvious misapprehension of the instructions.

The special findings leave no room for doubt upon the question. The findings are:

"Q. 1. Did the defendant, Theodore C. Mueller, know the first written statement handed to the plaintiff by George Christopher was false at the time it was handed to him, or before the contract was entered into? A. Yes.

"Q. 2. Did the defendant, Theodore C. Mueller, know anything about the contents of the second written statement at any time before the sale of the one-half interest was made to George Christopher? A. No evidence to show he did.

"Q. 3. Did the plaintiff rely solely upon the statements furnished him by George Christopher on September 12, 1915, with reference to the assets and liabilities of the Topeka Fruit & Produce Company, in making the purchase of a one-half interest in the business. A. No.

"Q. 4. Did the defendant, Theodore C. Mueller, knowingly make any false representations to the plaintiff with reference to the assets and business of the Topeka Fruit & Produce Company? A. Yes.

"Q. 5. If you answer question No. 4 'Yes,' please state fully the false representation so made by Theodore C. Mueller. A. He stated commission[er] accounts were good and collectible every Monday morning, referring to accounts receivable so far as plaintiff could possibly understand after asking him what accounts receivable meant or represented. Further that it was a good going business and that he would go into it himself if not otherwise tied up.

"Q. 6. At the time the sale was made to the plaintiff, was the defendant, Theodore C. Mueller, an owner of a one-half interest in the Topeka Fruit & Produce Company? A. Yes, so far as evidence discloses.

"Q. 7. Did the defendant, Theodore C. Mueller, know that any statement he made with reference to the business of the Topeka Fruit & Produce Company was false when made? A. Yes.

"Q. 8. Had the defendant, Theodore C. Mueller, any reason to believe that any of his statements were false when he made them? A. Yes.

"Q. 9. Did the defendant, Theodore C. Mueller, know anything about the books and accounts of the Topeka Fruit & Produce Company at any time during the last six months prior to the sale of the one-half interest by George Christopher to the plaintiff? A. Yes.

"Q. 10. Did any of the officers of the defendant, Bank, know that the written or oral statements made to Abmeyer at and before his purchase of the one-half interest in the Topeka Fruit & Produce Company were untrue, if you find any statements were untrue. If so, give their names. A. Yes. Theo. C. Mueller, president.

"Q. 11. Was the defendant, Theodore C. Mueller, acting for the bank in what he did in connection with the sale of the one-half interest by George Christopher to the plaintiff? A. Yes, and for himself individually.

"Q. 12. Did the defendant, Theodore C. Mueller, act in good faith in what he did about the purchase of the one-half interest in the Topeka Fruit & Produce Company by Abmeyer? A. No.

"Q. 13. What was the reasonable value of the half interest in the produce business purchased by the plaintiff, at the time of the purchase? A. It had no value."

In passing upon defendants' motion for a new trial, the court held that the verdict as against the defendants for any sum in excess of $2,500 was not warranted by the evidence, and required plaintiff to consent to a reduction to that amount; otherwise a new trial would be ordered. It is insisted that this was error, because there is no consistent theory disclosed by the evidence upon which the court could base the reduction of the verdict to $2,500. While it is not very clear from the record just what sum the plaintiff should recover, it is clear that he is entitled to recover all the money he paid for the interest in the business, less any proper credits arising from benefits he received while a partner, or from the proceeds of his sale to Christopher. The evidence shows he received $300 from Christopher and a note for the balance of the $1,000. It was proper to consider, however, the labor and efforts he expended in making the business worth enough to realize $1,000 for his interest. We think it is apparent that the court did not allow the plaintiff too much; and the defendants cannot complain if the amount of the judgment is less than the evidence would warrant. We are impressed with the belief that substantial justice has been accomplished. The findings are fully sustained by the evidence; in fact, Mueller's admissions on his

cross-examination tended strongly to corroborate the story told by the plaintiff. He admitted that he had been at one time part owner of the business, but claimed to have resold his interest to Christopher. The jury found that Mueller represented that the produce company was a good going business, and that if he was not tied up he would go into it himself. The petition alleged the representation to be that the business was a money-maker, and that Mueller would go into it himself if he was not tied up. We see no substantial difference. This finding, together with the findings that Mueller was interested in the business; that he knew the written statement handed plaintiff by Christopher was false; that he made the representations knowing them to be false; that he did know about the books and accounts of the business at the time of the sale and was not acting in good faith; and the further finding that the business had no value, we think ought to be sufficient to support the judgment.

The argument that if any fraud was perpetrated it was in the sale of the property, not in making the loan to Abmeyer or taking the proceeds of the loan in payment of the debt the business owed to the bank, is not sound. There was evidence to sustain a finding that the fraud permeated the whole transaction, and the court was fully warranted in instructing that the knowledge the president of the bank received while acting in its behalf would be the knowledge of the bank.

The court gave the proper measure of damages to be the difference between the reasonable value of the one-half interest in the business at the time of its purchase by plaintiff, and what it was represented to be worth at that time. (*Speed v. Hollingsworth,* 54 Kan. 436, 38 Pac. 496; *Stroupe v. Hewitt,* 90 Kan. 200, 133 Pac. 562; *McDaniel v. Whalen,* 91 Kan. 488, 138 Pac. 590; *Epp v. Hinton,* 91 Kan. 513, 138 Pac. 576.)

Numerous other complaints are urged against the instructions, but we think those given by the court fairly stated the law applicable to the facts.

Amendments of pleadings are within the discretion of the trial court, and there was no abuse of discretion in permitting the petition to be amended. The court instructed that in determining the real facts, the jury might consider the statements in the original, as well as those in the amended petition.

Requested instruction No. 6 was properly refused; the bank was not entitled to a verdict merely because Mueller was acting in his own interests, provided, as the court charged in other instructions, he was at the same time acting in the interest of the bank.   Besides, the bank must be held to have ratified and approved his conduct when, after it had received written notice of plaintiff's claim of fraud, it elected to retain the $2,850 which went to satisfy Christopher's notes.   The law will not permit it to retain the benefits of the transaction while denying the authority of the agent by whom it was consummated.  (*Bank of Lakin v. National Bank,* 57 Kan. 183, 45 Pac. 587; *Lumber Co. v. Silo Co.,* 92 Kan. 368, 140 Pac. 867; *Means v. Bank,* 97 Kan. 748, 156 Pac. 701; *Advertising Co. v. Smalley,* 101 Kan. 645, 168 Pac. 677.)

It is seriously contended that defendants were entitled to judgment on the opening statement of counsel for plaintiff; and this is based upon an excerpt of about a dozen lines of a statement said to have comprised twelve pages of manuscript. Authorities criticising the practice of directing a verdict on opening statements, and restricting the scope of the trial court in that respect, are not cited by the defendants.  (*Brashear v. Rabenstein,* 71 Kan. 455, 80 Pac. 950; and cases cited in Note, 29 L. R. A., n. s., 219.)

We discover no error in the record, and the judgment is affirmed.