No. 24,679.

MARTIN LADD, as Receiver for the PEOPLES STATE BANK OF COFFEY-VILLE, *Appellant,* v. F. W. READ, *Appellee.*

SYLLABUS BY THE COURT.

1. NEGOTIABLE NOTES—*Note Payable to Maker—When Maker is Entitled to Rights of an Innocent Holder.* Whether or not the payee of a promissory note may ever be properly described as a holder in due course, he may sustain such a relation to it as to be entitled to enforce it as one having the rights of an innocent purchaser, notwithstanding its execution had been procured by fraud.

2. SAME—*Notes Procured by False Representations of Officers of Bank—Bank Not a Holder in Due Course.* Where the president and vice president of a bank by false representations as to their financial resources induce an acquaintance to execute his note to the bank and deliver it to them in exchange for theirs to him, his account at the bank being given credit, which is transferred by his check to one of them, the bank is not entitled to enforce the note as an innocent purchaser, being chargeable with the knowledge these officers had of its fraudulent origin, particularly in view of the fact that the credit resulting from it was transferred to the accounts of insolvent debtors of the bank.

Appeal from Montgomery district court; JOSEPH W. HOLDREN, judge. Opinion filed July 7, 1923. Affirmed.

*W. E. Ziegler, A. M. Etchen,* and *Carl E. Ziegler,* all of Coffeyville, for the appellant.

*Walter S. Keith,* and *Harold McGugin,* both of Coffeyville, for the appellee.

The opinion of the court was delivered by

MASON, J.: The receiver of the Peoples State Bank of Coffeyville sued F. W. Read upon two promissory notes for the aggregate amount of $5,000. Judgment was rendered for the defendant, and the plaintiff appeals.

The questions of law upon which the case turns are raised by various assignments of error. But as under the instructions the verdict necessarily implies a finding (made upon sufficient evidence) of the truth of the defendant's version of the transaction involved, the case will·be treated, for the sake of simplicity and brevity in statement, as turning upon whether the judgment is warranted by the conditions alleged in the answer and supported by the evidence, which will be spoken of as the established facts.

A. S. Newman and R. P. Newman were respectively president and vice president of the bank, which proved to be insolvent. They asked the defendant to execute to the bank his notes for $5,000 in exchange for their note to him for the same amount in order that they might in this way obtain the money to apply upon the price of a building they were buying for $50,000, on which they represented that they had paid $40,000, having a clear interest therein to that extent. He executed the notes in reliance upon that representation, which was knowingly false, the building being encumbered with mortgages for $36,000. The exchange of the notes was made, the defendant's notes were placed with the assets of the bank, credit being given him for the amount, and he giving checks for it to R. P. Newman, who by check transferred $2,000 of it to the credit of the firm of Newman Brothers and $3,000 to the credit of a corporation in which they owned a majority of the stock, both concerns being insolvent and in debt to the bank in much larger amounts. The defendant offered to return to the receiver the note of the Newmans.

1. The note, having been obtained from the defendant by fraud practiced upon him, was not enforceable unless because the bank's relation to the matter was such that on account of its ignorance of the wrong a defense based thereon was not available against it. Whether under the uniform negotiable-instruments act the payee of·a note can be properly described as a holder in due course is a matter of controversy, the majority opinion being in the affirmative. (8 C. J. 469; Notes, 15 A. L. R. 437, 21 A. L. R. 1365.) The dispute on the subject appears to·be largely verbal. Under the statutory definitions of the various terms involved there is difficulty in applying the phrase "holder in due course" to the payee, but the act contains nothing preventing the payee of a note the signature to which was induced by fraud from acquiring it in such a way as to be able to enforce it under the ordinary equitable principles that

give protection to an innocent purchaser because of his character as such, which are similar to, although not precisely the same as those relating to the holder in due course of negotiable paper. The rights of the parties hereto are substantially the same as though the defendant had made his notes payable to the Newmans and they had indorsed them to the bank.

2. We cannot regard the bank as entitled to the privileges of a buyer in good faith. Its officers, the president and vice president, arranged the entire matter. The case is not one of the defendant borrowing money from the bank and then being swindled out of it. The execution of the notes by the defendant, the giving him credit on the books of the bank for the amount, the transfer of the credit to R. P. Newman by means of the defendant's check, and the delivery to the defendant of the note of the Newmans, were all parts of one transaction, and the real consideration the defendant received for his notes—the consideration that was in contemplation when the deal was arranged—was the $5,000 Newman note. The Newmans were not acting merely for themselves in the matter—they were the representatives and the sole representatives of the bank in the acquisition of the notes. The defendant testified that they called him into the bank, there made out the notes which he signed, giving him their note for $5,000, and he immediately giving R. P. Newman his check for that amount.

Where in a transaction between a bank and one of its officers, he acts in his own behalf and the bank is represented by some one else, his knowledge of a fraud perpetrated by him in connection with the matter is not imputed to it, the reason being that he would naturally conceal the fact of his own turpitude. But where the bank acts through an officer in a deal for his personal benefit involving fraud on his part there is no occasion for weighing the likelihood of his having advised the bank of the facts, because so far as affects its action in the matter in hand he is the bank. In such a situation his knowledge is to be treated as that of the bank. Although there is a difference of judicial opinion on the subject this is in accordance with the weight of authority. (Notes, 2 L. R. A., n. s., 993, 996; 29 L. R. A., n. s., 558, 562; 49 L. R. A., n. s., 764) and we regard it as the sounder doctrine. It has heretofore been applied by this court. (*Hardy v. National Bank,* 56 Kan. 493, 43 Pac. 1125; see, also, *Underwood v. Fosha,* 96 Kan. 240, 150 Pac. 571.)

Moreover, the bank was to a large extent the real beneficiary of the arrangement with the defendant, for the credit given to him was transferred to the Newmans and their corporation, insolvent debtors of the bank. This is an additional reason for charging the bank with knowledge of the fraud. (Note, 2 L. R. A., n. s., 993, 996.) In *Abmeyer v. Bank,* 103 Kan. 356, 179 Pac. 368, where in an analogous situation the knowledge of the president was imputed to the bank, it was held liable for the fraud of its officers because of its having received and retained the proceeds. The present case is the stronger against the bank because here it (through the receiver) comes into court seeking affirmative relief—asking payment of a note obtained through the fraud of its officers, which it can enforce only on equitable grounds by proof of being in the position of an innocent purchaser for value.

In the talk between the Newmans and the defendant something was said about their not wishing and perhaps not being at liberty under the law to borrow money from the bank. But the case is not at all like *Bank v. Watson,* 99 Kan. 686, 163 Pac. 637, where the maker was held liable on a note given for a loan to another person who was already a borrower up to the legal limit. Here there was no purpose on the part of the defendant to evade the law; he signed the notes, not under an agreement that he would not be called upon to pay them, but in reliance upon the note of the Newmans given him in return, induced by misrepresentations concerning their financial resources.

The judgment is affirmed.