### No. 20,091.

A. C. MEANS, *Appellee*, v. THE MERCHANTS STATE BANK and THE MERCHANTS RESERVE STATE BANK, *Appellants*.

#### SYLLABUS BY THE COURT.

1. BANKING—*Accommodation Note—Indorsed by Bank—Note Paid by Accommodation Maker—Liability of Bank.*   Plaintiff executed to a bank his promissory note, which the bank sold and indorsed.   The indorsee sued the plaintiff on the note and obtained judgment against him.   In a suit by plaintiff to compel the bank to pay the judgment, the petition alleged that he was an accommodation maker, and that the president of the bank promised him that the bank would save him harmless from any liability on the note.   *Held*, that as the note was given solely for the accommodation of the bank, which received and retained the consideration, the plaintiff may maintain the suit independent of the authority of the president to bind the bank by the promise.

2. SAME—*Findings Sustained by Evidence.*   The evidence in this case is examined and held sufficient to sustain the general finding in plaintiff's favor.

3. SAME—*Note Not Executed to Deceive Bank Commissioner.*   It is further held, upon the facts stated in the opinion, that the defendants failed to establish that plaintiff executed the note with the intent to enable the officers of the bank to deceive the bank commissioner or to conceal the condition of the bank from its stockholders and creditors.

Appeal from Sedgwick district court, division No. 1; THOMAS C. WILSON, judge.   Opinion filed April 8, 1916.   Affirmed.

*S. B. Amidon, D. M. Dale, Jean Madalene,* and *S. A. Buckland,* all of Wichita, for the appellants.

*R. L. Holmes, Charles G. Yankey,* and *W. E. Holmes,* all of Wichita, for the appellee.

The opinion of the court was delivered by

PORTER, J.: A. C. Means executed and delivered to the Merchants State Bank of Wichita two promissory notes, each for the sum of $5000, dated April 19, 1913. One of the notes was payable directly to the bank; the other, which is the one involved in controversy here, was payable to Means himself and he indorsed it to the bank. After he had renewed it once the renewal note was sold to a bank in Kansas City, which subsequently sued Means thereon and recovered judgment for the full amount and interest. In the meantime the Merchants State Bank and the Merchants Reserve State Bank, both of Wichita, consolidated, and Means brought this action against both banks to compel them to pay the judgment.

The petition alleged that the notes were executed as an accommodation to the Merchants State Bank, without any consideration being given, and under an agreement with J. W. Dice, president of the bank, by which the bank was to hold plaintiff harmless and free from any liability upon the notes.

The defendants answered that the arrangement between Dice and Means was an individual transaction; that Dice acted without authority of the board of directors and without their knowledge and consent; and further, that the transaction was for the fraudulent purpose of deceiving the state bank commissioner and the stockholders and creditors of the bank as to its condition, and that the plaintiff was estopped to say that he was not bound by the note.

At the trial the defendants objected to having a jury called, and claimed that the case was an equitable one for the court to decide. The court called a jury in an advisory capacity, and the jury made certain findings of fact. Without approving or disapproving the findings of the jury the court rendered a general judgment in plaintiff's favor for the expenses of defending the action brought against him on the note and directing the defendants to pay the judgment.

Plaintiff claims that the notes were given without consideration and under the following circumstances: In 1912 one W. H. Kelchner, who had been operating a meat market in Wichita, was largely indebted to the bank on notes, and the bank was compelled to take over the business. For a while it employed Kelchner to manage the business. Later it employed John Chain, paying him $25 a week, and in lieu of Kelchner's notes Chain gave his notes to the bank. Sometime in March, 1913, Means applied to the bank for employment, and the cashier told him that Chain's management of the meat market was not satisfactory, that the bank might give him the position under the same arrangement, and that if he wanted it, to see Mr. Dice, president of the bank. Mr. Dice told him that they were carrying $10,000 of Kelchner's notes in Chain's name, and said:

"Of course, your notes will simply replace Chain's. There is no liability whatever on it. There will be no liability in any way at all. You will never be asked to pay the notes or the interest. You are simply loaning your credit to the bank. In addition to this I will give you my personal guarantee that you will never get into trouble or be asked to pay these."

Several days later Means executed the notes for the accommodation of the bank, and took charge of the management of the meat market and continued there until sometime in November. Before the notes fell due Mr. Dice had severed his connection with the bank, and the president who succeeded him and one of the directors spoke to Means about the notes. Means testified that he told them he did not owe the notes, that they were accommodation paper and the bank had agreed to protect him; but that the new officers stated in substance that they understood the notes had been given to the bank in the regular course of business. Sometime later, at the request of Dice, the plaintiff renewed both notes.

The question is, whether upon the facts the plaintiff was entitled to judgment. One contention of the defendants is that Dice acted as an individual in the transaction, without authority from the board of directors, and therefore the bank is not bound by his agreement with the plaintiff. A number of authorities are cited which hold that an agreement with the president or cashier of a bank that the indorser of a promissory

note shall not be liable on his indorsement will not bind the bank for the reason that it is no part of the duties of the president or cashier to make such contracts. (*Bank of the United States v. Dunn,* 31 U. S. 51, 8 L. Ed. 316.) The correctness of this general rule may be conceded. On the other hand, plaintiff relies upon the well-settled doctrine that a principal can not repudiate the authority of an agent and at the same time ratify it by accepting and retaining the benefits therefrom. (*Bank of Lakin v. National Bank,* 57 Kan. 183, 185, 45 Pac. 587; *McKinstry v. Citizens' Bank,* 57 Kan. 279, 46 Pac. 302; *Aultman v. Knoll,* 71 Kan. 109, 79 Pac. 1074; *Watt v. Railway Co.,* 82 Kan. 458, 463, 108 Pac. 811.)

In our opinion, however, the case can not be made to turn upon the question of the authority of Dice as president to bind the bank by the agreement that Means should not be liable on the notes. If it be true that the notes were given solely for accommodation of the bank and the bank received the benefits of the transaction, the plaintiff, independent of any promise made by Dice, has the right to maintain this suit to compel the bank to take care of the obligation unless he be estopped on the ground that the transaction with the bank is against public policy.

And this brings us to the second contention of the defendants—that the entire transaction is void for the reason that the evidence conclusively shows that the transaction was entered into for the purpose of deceiving the bank commissioner and making it appear to the creditors and stockholders that the bank held these notes as valid notes. Authorities are cited holding that where an officer of a bank enters into a transaction with an individual with such a purpose, and executes legal instruments of an obligatory character for that purpose, the maker of the obligation can not thereafter be heard to say they are invalid. Thus, in *State Bank of Moore v. Forsyth,* 41 Mont. 249, 108 Pac. 914, it was held that under such circumstances "it is sound reason, as well as pure justice, to leave him bound who has bound himself." (p. 267.) The soundness of the general rule contended for by the defendants can not be doubted. A more serious question is, How can this principle of law be said to apply to the facts of this case, with a general finding by the trial court in plaintiff's favor, aided

by the inferences and presumptions to which it is entitled, and keeping in mind the well-established rule that if there be a theory fairly sustained by evidence and upon which plaintiff is entitled to recover we must affirm the judgment?

The defendants offered testimony showing that the bank commissioner had directed the Kelchner loans reduced; but we find nothing in the plaintiff's testimony showing that he had heard or known of this fact, and there is nothing in his testimony indicating that in executing the notes he had any thought or purpose of deceiving the bank commissioner or of misleading the stockholders and creditors of the bank. His testimony is, in substance, that Dice told him the bank did not care to have the public know it was operating a meat market. The bank had been operating this market for a considerable time before that, and presumably with the knowledge and consent of the bank commissioner. Banks are sometimes compelled to take over a mercantile enterprise in order to protect themselves from loss, and it is not necessarily fraudulent. or against public policy for a bank which is obliged to do so to conceal the fact from the public.

We think the plaintiff's evidence tended to support his theory that Dice had no individual interest in the transaction and was acting solely for the bank. The bank had taken over and was operating the Kelchner market long before either Chain or the plaintiff had anything to do with the business; and the evidence shows that the bank had found it necessary, in order to protect itself from loss, to purchase a chattel mortgage held by a packing company which was a prior lien. It paid $6600 and took an assignment of the mortgage, which it foreclosed. The money used to purchase the mortgage was derived from the sale to the Kansas City bank of one of Chain's notes for $5000, and in part from the proceeds of the other Chain note which the bank carried as an asset. Clearly, the Merchants State Bank received full consideration for the Chain notes. The note involved in this controversy is the one executed by Means which the bank used to replace Chain's note held by the Kansas City bank. It appears Chain loaned his credit to the Merchants State Bank, which it used to obtain $5000 from the bank in Kansas City; and when the note came due, the Merchants State Bank replaced it with the note obtained from

the plaintiff. In fact it surrendered to Chain both his notes, substituting therefor those executed by the plaintiff. To sustain the judgment in plaintiff's favor he is entitled to every reasonable inference which may be derived from the evidence. Independent of the agreement with Dice to hold the plaintiff harmless, the bank on this theory of the case is liable as the accommodated party and should reimburse the accommodation-maker or assume liability for the outstanding obligation.

It is difficult to see how it can be said that Means by loaning his credit to the bank assisted it in any fraud upon its stockholders and creditors, and it is not suggested that the bank sustained any loss by the transaction. The bank received the consideration for the note, and, moreover, it seems to have been used for a legitimate purpose. Through the sale of the note the bank received the full benefit of the arrangement, and to permit it to repudiate the transaction would result in a serious wrong to the plaintiff. It has been held that a national bank can not set up its want of legal capacity in order to escape a just responsibility. (*National Bank v. Case,* 99 U. S. 628.)

It is suggested by the defendants that the transaction was in violation of the penal statute (Gen. Stat. 1909, § 473) which forbids the making of false reports and entries by officers of banks. The defendants assume that in order to carry out the transaction it became necessary for some officer to make false entries upon the books of the bank and false reports to the banking department. The evidence does not show that any false entries or reports were made, or that if they were made it was with the knowledge or consent of the plaintiff.

It was urged in the court below that the notes were executed by Means for the purpose of enabling the bank to conceal its true condition from the bank commissioner, but the judgment is a finding against the defendants on this contention. We think the cases relied upon by the defendants, where obligations were entered into for the purpose of deceiving stockholders and creditors of a bank or state officers charged with the control of banks, have no application to the facts in view of the general judgment in plaintiff's favor.

It follows that the judgment will be affirmed.