No. 20,318.

THE GERMAN AMERICAN STATE BANK, *Appellee,* v. W. T. WATSON, *Appellant.*

### SYLLABUS BY THE COURT.

1. BANKING—*Excessive Loan to Customer—Accommodation Note by Third Party—Liability.* Where a bank desires to make an additional loan to a customer, but can not do so because it has already lent him as much as the law permits, and for that reason induces another person to give his note for the amount, promising to hold him harmless in the matter, in legal contemplation the borrower, who receives the

money, and not the bank, which pays it out, is the party for whose accommodation the note is signed.

2. ACCOMMODATION NOTE—*Oral Agreement—Unavailable as a Defense.* The maker of a note can not defend an action thereon by showing an oral agreement made at the time of its execution that he should not be held liable, for the reason that this would violate the rule forbidding the contradiction of the terms of a written instrument by parol evidence.

3. ACCOMMODATION NOTE—*Deceiving Bank Examiner—Liability.* The maker of a note can not defend an action thereon by showing that it was executed without benefit to him, under an agreement exempting him from liability, in order to enable the bank to which it was payable to make an additional loan to a customer who had already borrowed to the limit allowed by law, for the reason that having voluntarily signed the note in order that the examiner might believe it to be an asset of the bank he ought not to be permitted to deny it that effect.

4. ACCOMMODATION NOTE — *Extension of Time — Maker Not Released.* The maker of a note given for the accommodation of one whose indebtedness is evidenced by a separate note to the same payee, is not released by the granting of an extension of time without his knowledge, or by the surrender of security to the person accommodated.

Appeal from Anderson district court; CHARLES A. SMART, judge. Opinion filed February 10, 1917. Affirmed.

*H. A. Ewing, S. A. Gard, G. R. Gard,* all of Iola, and *C. A. Matson,* of Wichita, for the appellant.

*Edwin D. McKeever,* of Topeka, for the appellee.

The opinion of the court was delivered by

MASON, J.: The German American State Bank sued W. T. Watson upon two notes, one for $1748.15, signed by him and payable to the bank, the other for $280, signed by I. M. Blitz, payable to Watson, and indorsed by him to the bank. The execution and indorsement were admitted, but the defendant pleaded facts which he relied upon as relieving him from liability. A demurrer to his evidence was sustained, and he appeals.

Most of the evidence of the defendant was directed to the proposition that he was not liable upon the larger note because of the circumstances under which the note of which it was a renewal was executed, which were thus stated in the answer:

"The said Blitz applied to the said The German American State Bank for a loan of seventeen hundred thirty-eight and 55-100

($1738.55) dollars, and that said bank, through its president, Metzger, then agreed to make said loan.

"That at said time the said bank, through its president, Metzger, stated to this defendant that said Blitz had arranged with them for the said loan, but that he had already borrowed from the bank as much ·as it could loan to any one individual and that it desired to make the loan in the name of this defendant; and at the same time stated that said Blitz was solvent and in first class financial condition, and that the loan was a good óne and that if defendant would execute a note in his own name for the said loan it would be considered as an accommodation to the bank and not be regarded as ·any personal obligation of his, and that said bank would also take from the said Blitz a note and collateral security therefor, such as diamonds and jewelry, so that the note would be amply secured and this defendant would be incurring no obligation by the making of said note.

"That relying on said statements and for the purpose of accommodating said bank, without any consideration whatever to this defendant, he, on December 27, 1911, executed and delivered to said bank a note for the sum of $1736.55, the amount said I. M. Blitz was at said time borrowing from said bank; and that at the same time said I. M. Blitz executed and delivered his own note for that amount, made payable to this defendant and endorsed to said bank, or made directly to said bank and delivered to it, and delivered to said bank certain diamonds and other jewelry, the exact kinds and descriptions of which defendant does not know and can not give, but which the said Metzger stated to this defendant were of sufficient value to more than pay the said sum so borrowed, and which plaintiff alleges were of such value."

1. This portion of the answer stated no defense, and so far as the evidence of the defendant tended to support the allegations quoted the demurrer was properly sustained for several reasons. The fact that the maker received no benefit from the transaction did not constitute a defense. The loan made by the bank to Blitz was a sufficient consideration. (8 C. J. 214; 4 A. & E. Encycl. of L. 188.) While the answer alleges that the defendant signed the note "for the purpose of accommodating said bank," the facts set out show that in legal contemplation Blitz was the person accommodated.

The accommodated party is he to whom the credit of the accommodation party is loaned, and is not necessarily the payee, since the inquiry always is as to whom did the maker of the paper loan his credit as a matter of fact. And the fact that one derives some incidental benefit from the paper will not make it accommodation paper as to him." (8 C. J. 254.)

In illustrative cases cited to the foregoing text this language was used:

"'The accommodated party, in a legal sense, is the person to whom the credit of the accommodating party is loaned, not a third person who may receive an advantage by the loan of the credit.'

"'To have the money raised on a new note made by defendant was in a certain popular sense an accommodation, that is, a convenience, to the plaintiff, just as it is a convenience to a creditor who wants his money but can not get it from his debtor in cash, to get payment by a note on which he can raise the money temporarily, though at the risk of an indorsement which he may ultimately have to pay. But this is very far from what the law means by accommodation paper.'" (Note 79.)

The note was not executed to enable the bank to obtain money from some one else, but to enable Blitz to obtain more money from the bank. The defendant's credit was not lent to the bank, but to Blitz, the effect of the transaction being to enable him to borrow upon the credit of the defendant after the credit which the bank under the law could extend to him had been exhausted. The circumstance that the bank was desirous of doing the business, and that the defendant was moved by friendship for the bank rather than for Blitz—by a desire to help the lender to earn interest rather than by a wish to aid the borrower in obtaining a loan—does not affect the legal relation of the parties. The situation is entirely different from that presented in *Means v. Bank*, 97 Kan. 748, 156 Pac. 701, where it was held that a bank was bound to protect the maker of a note executed to it, for its accommodation, the proceeds of which it received and retained. Here the money was lent to Blitz upon the strength of the note signed by the defendant, without which the loan could not have been made. The circumstance that the president of the bank told him that the loan was otherwise secured, and that he would not have to pay it, does not alter the fact that it furnished a consideration for the note.

2. By the weight of authority an executive officer of a bank has no implied authority to bind it by a promise that one who signs a note shall not be required to pay it. The cases on the subject are collected in a note in 28 L. R. A., n. s., 501, where it is said:

"It is a general rule recognized by the great majority of the cases, that the president or cashier or any other similar executive officer of a

44—99 KAN.

bank has no authority, simply by virtue of his office, to bind his bank by an agreement made with the maker or indorsers of commercial paper payable to the bank, that their liability on such paper will not be enforced. The rule applies whether the agreement is made before the paper has been signed, or after."

Where an officer, in taking a note in behalf of the bank, agrees that it shall not be enforced, the question of the extent of his agency may perhaps be eliminated by the rule that a principal can not accept the fruits of a contract made for it and at the same time reject any burdens assumed on the ground that they were unauthorized. (*Lumber Co. v. Silo Co.,* 92 Kan. 368, 140 Pac. 867; cases cited in *Means v. Bank,* supra.) However this may be, the oral agreement that the defendant was not to be held to the payment of the note was not enforceable because it was in direct conflict with the terms of the written instrument, which could not be contradicted in this manner. (*Stevens v. Inch,* 98 Kan. 306, 158 Pac. 43; 17 Cyc. 589; 4 Wigmore on Evidence, § 2444, ¶ 3.)

3. Moreover the enforcement of an agreement between the bank and the defendant, that Blitz alone should be liable for the payment of the loan, must be refused upon another ground. To allow the relations of the parties to be controlled by such an agreement would be to countenance and give effect to a secret arrangement entered into for the purpose of evading the law which limits the amount which a bank may lend to one person. (Gen. Stat. 1915, § 530.) In *Means v. Bank,* 97 Kan. 748, 156 Pac. 701, the facts were held not to render the principle applicable, but this was said concerning it:

"And this brings us to the second contention of the defendants— that the entire transaction is void for the reason that the evidence conclusively shows that the transaction was entered into for the purpose of deceiving the bank commissioner and making it appear to the creditors and stockholders that the bank held these notes as valid notes. Authorities are cited holding that where an officer of a bank enters into a transaction with an individual with such a purpose, and executes legal instruments of an obligatory character for that purpose, the maker of the obligation can not thereafter be heard to say that they are invalid. Thus, in *State Bank of Moore v. Forsyth,* 41 Mont. 249, 108 Pac. 914, it was held that under such circumstances 'it is sound reason, as well as pure justice, to leave him bound who has bound himself.' (p. 267.) The soundness of the general rule contended for by the defendants can not be doubted." (p. 751.)

The language attributed to the Montana court was quoted by it from *Pauly v. O'Brien,* 69 Fed. 460, where the maker of a note sought to escape liability by showing that it was given in renewal of one he had executed to a bank, to take the place of a matured note of one Naylor, at the request of. the president, who told him that the Naylor note was secured by sufficient jewelry to pay it, but that he desired to get it "out of the past-due notes," and would carry it as collateral to the note of 'the defendant. The court said:

"It thus appears that the defendant executed his first note, subsequently renewing it from time to time, and ultimately by the note in suit, for the purpose of having it take the place of the Naylor note, which, together with the collaterals, 'were to be collateral to the note' given by him. If, however, this was not really the case, but that, in truth, the transaction was a mere trick to make it appear to the government and to the creditors and stockholders of the bank that it had a valuable note when in fact it did not have one, the result must be the same, for, when parties employ legal instruments of an obligatory character for fraudulent and deceitful purposes, it is sound reason, as well as pure justice, to leave him bound who has bound himself. It will never do for the courts to hold that the officers of a bank, by the connivance of a third party, can give to it the semblance of solidity and security, and, when its insolvency is disclosed, that the third party can escape the consequences of his fraudulent act." (p. 461.)

In *New England Fire Insurance Co. v. Haynes,* 71 Vt. 306, an action on a note given to an insurance company to replace another, the court said:

"It is not necessary to decide whether it was error to admit parol evidence to show what occurred between Redington and the defendant, when the latter gave the note to the plaintiff, for the facts found on such evidence can not avail the defendant by way of defense to this action. Such facts show that he gave the note for the purpose of enabling the plaintiff to deceive the Insurance Commissioners of this state in respect to its then financial condition, and he is estopped from taking advantage of his own fraud in this behalf." (p. 310.)

In *Westwater v. Lyons,* 193 Fed. 817, a note for which the makers received no benefit was executed to a national bank, which used it as a substitute for a note representing a debt on which one McKinnie was liable, to deceive the comptroller of the currency. The circuit court of appeals held that it was a question of fact whether the note was given for the accommodation of McKinnie or of the bank, but said:

"Whether the note was given for the accommodation of McKinnie or

for the accommodation of the bank, would not matter, if, at the time it was given, Westwater was cognizant of the situation between the bank and the comptroller of the currency. . . . As we have already remarked, however, the innocence of the defendant in this respect underlies his whole defense and is a necessary postulate to every proposition involving the question of his liability." (pp. 820, 823.)

(See, also, *Murphy v. Gumaer,* 18 Colo. App. 183; *Third Nat'l Bank v. Reichert,* 101 Mo. App. 242; *Sickles v. Herold,* 32 N. Y. Supp. 1083; *Tasker's Estate. Tasker's Appeal,* 182 Pa. St. 122; *State Bank of Pittsburg v. Kirk, Appellant,* 216 Pa. St. 452.)

It has been held that a defense to a note is established by a showing that it was given to a bank, which parted with nothing on the strength of it, merely to enable an officer to deceive the examiner. (*Chicago Title & Trust Co. v. Brady,* 165 Mo. 197. See, also, *Rankin v. City National Bank,* 208 U. S. 541.) The same rule seems to have been applied in an unreported case (*Yates Center National Bank v. Schaede*) decided by the United States district court for the district of Kansas, in March, 1915, which was affirmed without opinion by the circuit court of appeals in September, 1916. While no formal opinion was delivered by the trial court, a memorandum was made which shows the scope of the decision, but does not affirmatively disclose whether the maker of the note was aware of the use that was to be made of it. It reads:

"This is an action by plaintiff, an insolvent national banking association, now in the hands of a receiver, to recover from defendant the contents of a promissory note for the sum of $1500, made by the defendant to the bank. The note in controversy is one of a series of renewal notes made by defendant at the solicitation of the president and general managing officer of the bank. It is the first of a series of like transactions engaged in by the president of the bank to conceal his defalcations in the bank, and the true financial condition of the bank, with paper apparently good, but in fact obtained without consideration, for the purpose of deceiving the comptroller of the currency or those whose duty it was to examine into the affairs of the bank, by giving it a false appearance of solvency.

"The defense interposed is want of consideration.

"Not only is this defense made out, but it further appears the whole transaction from the making of the original note to the renewal in controversy was without consideration, and in pursuance of the illegal and criminal design of the president of the bank. Such state of facts public policy and good morals alike condemn, and courts refuse to en-

force. This case differs in degree only from that of *Plaintiff v. Lauber*, and *Gillis, receiver, v. Fry*, this day determined.

"It follows, judgment must go for the defendant."

The present case is distinguishable from those just referred to on the ground, already stated, that here there was a consideration for the note, and the bank parted with its money on the strength of it. Notwithstanding any expressions of a contrary tendency in the cases cited, we are satisfied that at least where there is no want of a valid consideration, and the note was not in legal contemplation given for the accommodation of the bank, the maker can not defeat its payment by showing that with his knowledge it was intended to mislead the examiner as to the bank's condition or securities. The rule that an agreement in contravention of a statute, or of public policy, will not be enforced at the instance of either party, does not apply. The statute limiting the amount a bank may lend to one person operates for the protection of the stockholders and the public, as well as the depositors. It is the agreement that the defendant was not to be liable on the note, rather than the making of the note itself, that is objectionable as defeating the purposes of the banking act. The defendant, not the plaintiff, invokes it. To give effect to an understanding that a note executed to show compliance with the law should not be collected, would be to countenance, rather than repudiate, the arrangement for evading the statute, and would tend to defeat its object and to injure the persons for whose benefit it was enacted. In that situation the rule referred to has no application.

The evidence tended to show a slightly different state of facts from that alleged in the portion of the answer quoted. The pleading indicates that the original note, of which that sued on is a renewal, was given at the inception of the relations between the bank, the defendant and Blitz. The evidence is to the effect that at the instance of the president of the bank the defendant made or procured to be made various loans to Blitz, with the understanding that the bank was to take them up at any time; that in pursuance of this agreement the defendant asked that they be taken up; that this was done, the bank paying off the existing notes, and taking in exchange one signed by the defendant as well as one signed by Blitz, for

the reason' that it was already carrying all the Blitz paper it could. The evidence varied from the answer only in details. What has already been said as to the insufficiency of the defense pleaded applies as well to that undertaken to be shown by the evidence. The evidence as well as the pleading showed that there was a valid consideration for the defendant's note, that in legal contemplation Blitz was the person for whose accommodation it was made, and that its purpose was to enable the bank to make a loan which otherwise would be forbidden.

4. The answer set out that the bank had extended the time of payment of the Blitz indebtedness without the defendant's consent, and also that it had voluntarily surrendered to Blitz certain property which it held as collateral security for the loan. Neither allegation constituted a defense, so that it is immaterial whether the evidence tended to support them. Under the uniform negotiable instruments act the defendant was primarily liable, since by the terms of the note he had signed he was absolutely required to pay it. (Gen. Stat. 1915, § 6523.) His position was not more favorable than if he had signed a note as surety for Blitz, and in that case he would not have been released by the granting of an extension of time to his principal. (*Bank v. Bowdon*, 98 Kan. 140, 157 Pac. 429.) The reasoning by which that conclusion is supported is not completely applicable where security has been surrendered to the principal, but the same rule has been applied to that situation. (8 C. J. 620.) In the statutory enumeration of the methods by which a note may be discharged, which obviously is intended to exclude any not mentioned, no reference is made to the surrender of security. (Gen. Stat. 1915, §§ 6647-6653.)

The pleading and evidence, with respect to the note for $280, presents no defense not rendered unavailable by what has already been said.

The judgment is affirmed.