Bandel v. Shaw.

No. 24,918.

MRS. JOSEPHINE BANDEL AND EMMA PLESSE, *Appellees*, v. JOHN W. SHAW AND DELIA SHAW, *Appellants*.

SYLLABUS BY THE COURT.

1. PROMISSORY NOTE—*Foreclosure of Mortgage—No Defense Pleaded and Supported by Competent Evidence — Burden of Proof.* In an action on a promissory note and to foreclose a mortgage given to secure it, the record examined, and no sufficient defense pleaded and supported by competent evidence discovered therein which would shift the burden to the plaintiffs to show that they took the note with notice of any infirmities in it, nor any issue requiring the deliberate determination of a jury; and *held* that an instructed verdict was proper.

2. SAME—*Not an Accommodation Note Within Meaning of Negotiable-instruments Act.* Conceding the truth of a defense not pleaded but supported by some testimony, that the promissory note in question was given to a bank or to its cashier without consideration but merely to aid the bank and the cashier to deceive the bank commissioner as to the exact status of the bank's financial condition, the note so given was not an accommodation note within the meaning of the negotiable-instruments act, nor did such evidence tend to prove its negotiation in breach of faith so as to cast on plaintiffs the burden of showing that they acquired the note without notice of any infirmities in it.

Appeal from Pottawatomie district court; ROBERT C. HEIZER, judge. Opinion filed January 12, 1924. Affirmed.

C. E. Rugh, of Abilene, E. C. Brookens, E. S. Francis, H. L. Hart, all of Westmoreland, J. Glenn Logan, of Topeka, W. S. McClintock, and A. L. Quant, both of Kansas City, Mo., for the appellants.

A. E. Crane, and B. F. Messick, both of Topeka, and W. E. Smith, of Wamego, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: The plaintiffs brought this action on defendants' promissory note and to foreclose a real-estate mortgage given to secure its payment.

The note in question was dated April 10, 1917, for $7,511, with ten semiannual interest coupons annexed. It was payable to J. W. Arnold, indorsed as follows:

"For value received, I hereby assign and transfer the within note and coupons, together with all my interest in and rights under the mortgage securing the same, to Mrs. Josephine Bandel and Emma Plesse without recourse.

"J. W. ARNOLD."

Indorsements substantially similar, but not precisely the same in text, appeared on the interest coupons, upon which the action was also based. The mortgage was also formally assigned to plaintiffs.

Plaintiffs' petition alleged that one W. C. Bittman, now deceased, had been indebted to plaintiffs in the sum of $7,358, and executed his notes of March 12 and 19, 1919, to plaintiffs, and that defendants' note and mortgage, here sued on, had been indorsed and assigned in blank by J. W. Arnold and delivered to Bittman, and that Bittman had turned over defendants' note and mortgage to plaintiffs as security for Bittman's notes held by them. Plaintiffs alleged that after becoming the owners thereof they caused the blank indorsements to be filled up with their own names. Then followed the usual recitals of default, and of plaintiffs' rights thereunder, and a prayer for judgment and foreclosure.

Defendants' answer alleged that they were never indebted to J. W. Arnold and never received any consideration for the note from him or anyone else. They alleged that the note was given for the accommodation of the Farmers State Bank of Wamego; that Bittman never owned the note and mortgage, and that neither Bittman nor anyone else had ever assigned, transferred or indorsed them to plaintiffs. Defendants also alleged that the indorsements purporting to have been made by Arnold were forgeries and void.

The cause was submitted to a jury, but after evidence for both parties had been introduced, the court directed a verdict for plaintiffs.

Defendants assign various errors as a basis of their argument on appeal, but the only material question is whether an instructed verdict was proper.

The defendants' allegations that the indorsements were forgeries were gratuitous and no evidence was offered in their support. Defendants did present testimony that Bittman had induced the defendants to execute the note and coupons and mortgage to aid him in deceiving the state bank commissioner as to the exact status of the bank's financial condition; but plaintiffs' evidence rather persuasively disclosed that the defendants' note and mortgage were given to renew an earlier indebtedness which had its inception in 1906, and which had been the subject of repeated renewals, additions and subtractions, culminating in the note and mortgage here sued on. This was shown by memoranda of Arnold's, of Bittman's, and by the books of the bank, and partly by the public record of

mortgages. At one time, in 1910, this mortgage indebtedness had been as high as $10,000. Defendant John W. Shaw admitted he signed that note, and he would not take the responsibility on cross-examination of swearing he had never been given credit for that amount.

There was no fraud in the inception of the note, and it is doubtful if the transaction had any color of infirmity based upon its negotiation in breach of faith (Neg. Inst. act, § 62) so as to cast the burden on plaintiffs that they acquired it without notice of any vice in it; but in any event, the plaintiffs clearly sustained that burden and there was no evidence to the contrary; and, indeed, the plaintiffs' evidence showing a good consideration for the note and mortgage in the first instance extended much beyond what the statute required of them as innocent holders of commercial paper of questioned validity. And here it also should be mentioned that a promissory note given to a bank or banker for the purpose of padding the bank's assets to deceive the bank commissioner is very far from being an accommodation note within the meaning of the negotiable-instruments act. To call such a transaction the mere execution of an accommodation note for the benefit of the bank is an euphemism which might satisfy a Machiavelli or a Talleyrand, but lawyers and judges would hardly be justified in the use of language so lacking in definitive precision. The main defense here has some aspects not unlike that presented in *Bank v. Watson*, 99 Kan. 686, 163 Pac. 637, where the court declared that a note given to a bank to cover up an excess loan to a borrower, with the knowledge of the maker that it was intended to mislead the bank examiner as to the bank's condition, was not in legal contemplation an accommodation note. The syllabus of that case is so pertinent that we quote two paragraphs of it:

"2. The maker of a note cannot defend an action thereon by showing an oral agreement made at the time of its execution that he should not be held liable, for the reason that this would violate the rule forbidding the contradiction of the terms of a written instrument by parol evidence.

"3. The maker of a note cannot defend an action thereon by showing that it was executed without benefit to him, under an agreement exempting him from liability, in order to enable the bank to which it was payable to make an additional loan to a customer who had already borrowed to the limit allowed by law, for the reason that having voluntarily signed the note in order that the examiner might believe it to be an asset of the bank he ought not to be permitted to deny it that effect."

The foregoing necessarily disposes of this case. Defendants complain because plaintiffs were permitted to testify to the transaction with Bittman, since deceased, whereby they acquired the note and mortgage sued on. There may be a talking point on that proposition; but if so, what becomes of the only colorable defense made by defendants to this note, since it, too, could only have gotten into the evidence by their testimony touching their alleged transaction with Bittman, deceased? It is sufficient here, however, to say, that plaintiffs, being in possession of the note and mortgage before maturity, were presumably the owners, and did not need to show anything further until some defense adequately pleaded and supported by competent evidence had shifted the burden to them. Speaking strictly, that never happened in this lawsuit. Preliminary rulings on pleadings and on the admissibility of evidence although erroneous, or incompetent evidence let in and later stricken out before the case was closed, do not constitute reversible error unless a manifestly prejudicial result can be traced thereto. Nothing of that sort is apparent here.

Affirmed.