No. 25,312.

THE CEDAR STATE BANK, of Cedar, *Appellant,* v. P. B. OLSON, *Appellee.*

SYLLABUS BY THE COURT.

BANKING—*Note by Director to Take Place of Excessive Loans to Customers— Intent to Deceive Banking Department—Maker Liable on Note.* An officer or director of a bank who gives his note to the bank to take the place of notes representing excess loans, and for the purpose of making the banking department believe it to be an asset of the bank, is estopped from asserting a secret understanding that he is not to be held liable.

Appeal from Smith district court. WILLIAM R. MITCHELL, judge. Opinion filed June 7, 1924. Reversed.

*A. W. Relihan, T. D. Relihan,* and *J. T. Reed,* all of Smith Center, for the appellant.

*Hilary D. Mahin,* and *F. W. Mahin,* both of Smith Center, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The action was one to recover on a promissory note; the defense, no consideration; trial to a jury; verdict for plaintiff for $650. Motions by the defendant were to set aside the findings of fact and for judgment, for judgment on answers to special questions, and for a new trial. The court overruled the motion to set aside the findings, permitted the withdrawal of the motion for new trial, and sustained the motion to set aside the general verdict and to render judgment for the defendant on the special findings. The plaintiff appeals.

The testimony, among other things, showed that the defendant was a director of the bank and wife of the cashier; that she executed and delivered the note in question on August 20, 1921; that it was a renewal of a note for a like amount previously given; that the original note was given to the bank to replace some notes which evidenced certain excess loans to Messrs. Kammer, Johnson and Stivers; that the note in controversy was given in order that such excess loans might be taken out of the assets of the bank; that it was to be turned back to the defendant when the notes representing the excess loans were settled; that the original note for which the note sued on was a renewal, was executed for the purpose of enabling the bank to take out the Kammer, Johnson and Stivers notes, so that they would not appear in the bank's reports to the bank examiner or banking department; that the defendant knew and fully understood

that her note was to be placed in the bank as an asset and that it would be so reported to the banking department; that the notes representing the excess loans were taken out of the bank by the cashier and taken to his home; and that afterwards the management of the bank was changed, at which time defendant's husband (the cashier) returned to the bank the notes representing the excess loans. The cashier testified that he put the note in controversy in the assets of the bank, so that the bank would not have to report excess loans, although he stated that he told the bank examiner about it; that he did not notify the banking department of the agreement with the defendant about the note; that the excess notes were taken out of the bank because they were above the legal amount, not because they had been ordered out.

The special questions and answers of the jury were as follows:

"Q. 1. Was the note sued upon given by P. S. Olson for the purpose of making the officers of the banking department believe it to be an asset of the bank? A. Yes.

"Q. 2. If you answer question No. 1 in the affirmative, was her purpose in so doing to deceive the banking department as to the assets of the bank? A. Yes.

"Q. 3. Were the excess notes ever received and owned by defendant in consideration of the execution and delivery of the note sued upon herein? A. No.

"Q. 4. Were the excess notes of Stivers, Kammer and Johnson returned to the Cedar State Bank before the institution of this suit? A. Yes."

It is contended by the plaintiff, that while the note was given by the defendant at the request of the bank's officials, the giving of defendant's note enabled the bank to forbear collection of the notes representing the excess loans, and that the accommodation, as a matter of fact, was for the benefit of Kammer, Johnson and Stivers rather than of the bank; that the principles laid down in *Bank v. Watson,* 99 Kan. 686, 163 Pac. 637, should be applied here. On the other hand, it is contended by the defendant that there was no consideration for the note; that it was executed at the request and for the accommodation of the plaintiff alone; that the notes evidencing the excess loans were returned to the plaintiff, and that it would be unconscionable for plaintiff to hold the excess notes and sue defendant on her note; that there was no evidence to support the finding of the jury that the note was given to deceive the banking department or the officers or directors of the bank.

In *Bank v. Watson,* supra, an additional loan was made to one

21—116 Kan.

Blitz on the note of Watson, with the agreement that Watson should not be liable. Here no additional loan was made. In that case it was said:

"Where a bank desires to make an additional loan to a customer but cannot do so because it has already lent him as much as the law permits, and for that reason induces another person to give his note for the amount, promising to hold him harmless in the matter, in legal contemplation, the borrower, who receives the money, and not the bank which passes it out, is the party for whose accommodation the note is signed." (Syl. ¶ 1.)

May not the same principle properly apply here, where by reason of giving the note in controversy the bank was enabled to carry the makers of notes evidencing an excess loan for a long period of time (a year and a half)? And especially so, considering all the circumstances? The note was executed by one of the directors of the bank. It was given for the purpose of enabling the bank officials to place it in its files and carry it as a valid and subsisting asset; to represent to its stockholders and to report to the banking department of the state that it was a valid and subsisting asset of the bank. It was given as the jury found, and was warranted in finding from the testimony, for the purpose of deceiving the banking department. A similar question was considered in *Bandel v. Shaw,* 115 Kan. 185, 222 Pac. 62, where it was said:

"And here it also should be mentioned that a promissory note given to a bank or banker for the purpose of padding the bank's assets to deceive the bank commissioner is very far from being an accommodation note within the meaning of the negotiable-instruments act. To call such a transaction the mere execution of an accommodation note for the benefit of the bank is an euphemism which might satisfy a Machiavelli or a Talleyrand, but lawyers and judges would hardly be justified in the use of language so lacking in definitive precision. The main defense here has some aspects not unlike that presented in *Bank v. Watson,* 99 Kan. 686, 163 Pac. 637, where the court declared that a note given to a bank to cover up an excess loan to a borrower, with the knowledge of the maker that it was intended to mislead the bank examiner as to the bank's condition, was not in legal contemplation an accommodation note. The syllabus of that case is so pertinent that we quote two paragraphs of it: '2. The maker of a note cannot defend an action thereon by showing an oral agreement made at the time of its execution that he should not be held liable, for the reason that this would violate the rule forbidding the contradiction of the terms of a written instrument by parol evidence. 3. The maker of a note cannot defend an action thereon by showing that it was executed without benefit to him, under an agreement exempting him from liability, in order to enable the bank to which it was payable to make an additional loan to a customer who had already borrowed to the limit allowed by law, for the rea-

son that having voluntarily signed the note in order that the examiner might believe it to be an asset of the bank, he ought not to be permitted to deny it that effect.' " (p. 187.)

The statute provides that the bank commissioner may at any time order any excess loan reduced to the legal limit within sixty days from the date of the notification (R. S. 9-117). While the record does not disclose the financial condition of the bank at the time of the execution of the note, it may well be said that the directors, of whom the defendant was one, had a direct interest in causing the banking department to believe that its assets were sound—a sufficient interest to form the basis of a consideration for the note.

In *Union Bank v. Sullivan*, 214 N. Y. 332, 108 N. E. 558, it was held that where some of the listed assets of a bank were worthless, and stockholders and directors, instead of charging off such assets against the surplus, gave a note to the bank to protect its credit, the note was supported by a valuable consideration, for it enhanced the value of the makers' stock.

It was the duty of the officers and directors of the bank to conform to the requirements of the banking laws. It was a violation of duty in the first instance for them to make the excess loans. (R. S. 9-117; *Bank v. Hildebrand*, 103 Kan. 705, 177 Pac. 6.) It became their duty to replace the excess loans either with money or acceptable paper. They had a responsibility to see that their bank's transactions passed muster with the bank commissioner. Having assumed and performed that duty by giving her note to cover up the excess loan and thus to enable the bank to safely pass examination, may the defendant now successfully assert that she assumed no liability in so doing?

The banking business is fraught with public concern. Banks do business through permission of the law, subject always to its provisions for the protection of depositors, creditors and stockholders. Public faith, credit and honesty in business transactions are a bank's main assets. Banks are subject to public regulation to the end that they may make proper loans and freely contract debts with depositors and others, to achieve the ends of legitimate business. The statute requires careful examination by the bank commissioner periodically in order that those who deal with banks may not be misled by appearances. To sanction any arrangement whereby the real assets and securities of a bank are to be regarded as less than

or different from, the apparent assets and securities, would tend to defeat the entire purpose of the regulatory statutes. Parties may not participate in a transaction, the object of which is to give to the assets of a bank a favorable appearance for purposes of examination, but less favorable for purposes of liability or enforcement. The defendant, having signed the note with full understanding of its purposes, cannot be relieved of liability. Considering the note as a part of the bank's assets, an understanding or agreement of nonliability was neither proper nor tenable. It amounted to a fraud upon the depositors, stockholders and the public to agree that the obligation which the defendant assumed was in fact not an obligation. It amounted to a fraud upon the depositors, creditors and stockholders of the bank and a fraud upon the public, because it gave assurance that the assets of the bank were sound. Having given the note with the avowed object of having it appear as an asset for purposes of examination, she is estopped from asserting a secret understanding that she was not to be held liable. The law will not countenance contracts that are against the public good, and therefore forbidden by public policy.

For authorities bearing on varous phases of the subject, see notes in 26 L. R. A., n. s., 993; 28 L. R. A., n. s., 501; 34 L. R. A., n. s., 105; L. R. A. 1916A 1218; L. R. A. 1917B 618; *Central Bank of Bingham v. Stephens,* 199 Pac. 1018 (Utah); *Bank of Slater v. Union Station Bank,* 222 S. W. 993 (Mo.); *First National Bank v. Davidson,* 188 N. W. 194 (N. Dak.); *Vallely v. DeVaney,* 194 N. W. 903 (N. Dak.); *State Bank v. Forsythe,* 108 Pac. 914 (Mont.); *New England Fire Ins. Co. v. Haynes,* 71 Vt. 306; *Westwater v. Lyons,* 193 Fed. 817; *Means v. Bank,* 97 Kan. 748, 156 Pac. 701; *Bank v. Watson,* supra, and cases cited.

The judgment is reversed and the cause remanded with directions to enter judgment for the plaintiff.