No. 29,224.

WILLIAM DOCKING, as Receiver of the Kansas State Bank of El Dorado (S. H. BARNHILL, Substituted as Plaintiff), *Appellee,* v. JOSEPH SHARP, *Appellant.*

(286 Pac. 197.)

Opinion filed April 5, 1930.

*O. S. Samuel,* of Emporia, for the appellant.

*J. M. Pleasant,* of El Dorado, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action by William Docking as receiver of the Kansas State Bank of El Dorado to recover on a promissory

note for $3,000 executed by Charles H. Sharp and Joseph Sharp, dated July 28, 1922, and payable to the order of the bank with interest at 8 per cent.

The principal defense to the note made by Joseph Sharp was that Charles H. Sharp, his son, had executed a renewal note dated January 17, 1923, in satisfaction of the indebtedness evidenced by the prior note of 1922, and that the latter had been duly canceled and delivered to his son at that time.

Plaintiff's reply was that Charles H. Sharp never renewed the note of 1922 except conditionally. He called at the bank and paid the interest, and requested that a renewal note be prepared for himself and his father to sign—which was done. Charles signed the renewal note and stated that his father would call at the bank and sign it, and in reliance on such statement the bank suffered Charles to carry away the note of July 28, 1922.

Meantime the bank had gotten into some difficulty where it needed to get hold of some municipal bonds and it borrowed three thousand dollars' worth from S. H. Barnhill and pledged the renewal note of January 17, 1923, as security. Barnhill accepted that note on the understanding that it was to be signed by Joseph Sharp, as his son Charles had assured the bank he would do. Barnhill left the note in the bank for a time so that it might be signed by Joseph. Joseph, however, declined to sign the renewal note, and Charles became a bankrupt. The renewal note was then delivered to Barnhill, who retained it for a time and afterwards returned it to the bank. The bank became insolvent and Barnhill's bonds could not be returned to him. William Docking, receiver for the bank, brought suit on the note of July 28, 1922. The litigation which ensued extended over several years, so Barnhill, whom circumstances had made the beneficial owner of the indebtedness represented by the note, was substituted as plaintiff, and eventually issues were joined and the cause was tried before a jury which rendered a verdict for plaintiff, and special findings, some of which read:

"1. Who owns the note dated January 17, 1923? A. Barnhill.

"2. Did the bank ever assign, sell or otherwise deliver to the plaintiff, S. H. Barnhill, the claim which it had against Chas. H. Sharp and Jos. Sharp? A. Yes.

"3. If you answer the last question 'Yes,' state when and what was the consideration, if any, that was paid by Barnhill to said bank for said indebtedness. A. When he turned over the bonds to amount of $3,000.

"4. Did Jos. H. Sharp sign said note dated July 28, 1922, at the same time Chas. Sharp signed said note? A. No.

"5. Did the bank request the defendant, Jos. Sharp, to sign the note dated July 28, 1922, some time in September, 1922, as an accommodation to said bank? A. No."

Judgment was entered accordingly. Defendant assigns certain errors which will be noted in their order.

It is first urged that the pleadings filed by Barnhill after he was substituted as plaintiff constituted a departure from the original cause of action pleaded by Docking as receiver for the bank. The action had been filed in August, 1925, and went to trial in 1926, and a verdict rendered in favor of defendant. This verdict was set aside and a new trial granted in 1928. Because of this delay and because Docking was anxious to wind up the receivership Barnhill was substituted as plaintiff and additional pleadings were filed, which defendant construed to found an action on the indebtedness represented by the note of 1922 rather than on the note itself. Was this a substantial departure? We think not. The note of 1922 was only the written contract evidencing the identical indebtedness for which it was sought from first to last to subject defendant to judgment. In the recent case of *Armstrong v. Lough,* 128 Kan. 167, 277 Pac. 51, this court had occasion to review all its earlier decisions involving the question of departure, and it was there said:

"Against a plea of departure or variance under our liberal civil code the precaution of prime importance in the amending of pleadings is that the cause of action or defense be not materially changed. [Citations.] . . . Ordinarily a question of departure in a plaintiff's pleadings only arises when there is a seeming inconsistency between the petition and reply, but the really important fault of departure arises where there is a palpable inconsistency between the earlier and later pleadings of a litigant which prevents his adversary from squarely joining issues with him on material matters, and which, if countenanced by the court, would substantially change the action or defense from what it had been at its inception. [Citations.]" (p. 170.)

It is also contended that the substitution of Barnhill as plaintiff more than five years after the maturity of the note barred the action. We must hold otherwise. According to the facts developed partly by the pleadings and partly by the evidence, Barnhill, whether regarded as pledgee or as assignee, had sufficient interest to have begun and maintained the action in his own name in the first instance. (*Lower v. Shorthill,* 103 Kan. 534, 176 Pac. 107; *Lucky v. Rush,* 121 Kan. 279, 246 Pac. 1004; *Lawrence Nat'l*

*Bank v. Howard,* 125 Kan. 85, 262 Pac. 561.) It must be held that the substitution of Barnhill as plaintiff so long after the maturity of the note did not bar the further prosecution of the action, and the demurrer to plaintiff's evidence based on the suggestion of a departure was properly overruled.

Error is also assigned on the admission of incompetent evidence. This had particular reference to the testimony of the bank's officials touching the circumstances under which defendant's son Charles had been permitted to carry away the note of July, 1922. Defendant's objection to this testimony was that it related to a transaction in the absence of the defendant. This objection was not good. The defendant had pleaded and relied for his chief defense upon the fact that his son Charles had satisfied the note of July, 1922, by the giving of the renewal note of January, 1923, so of course it was proper for plaintiff to show all the facts of the very transaction relied on by defendant to prove that the note of July, 1922, had been paid.

Defendant also complains of the evidence admitted to show the nature of Barnhill's interest in the note of July, 1922, based, also, upon its being a transaction between the bank and Barnhill in the absence of defendant and therefore not binding on him. When a plaintiff's interest in a promissory note is disputed or questioned he has a right to show his interest, to testify as to how he acquired that interest; and the mere fact that defendant was not within hearing at the time such interest was acquired is not of the slightest consequence. If the law were otherwise a recovery could seldom be obtained upon a promissory note which has passed out of the hands of the original payee, and especially where it has been lost or destroyed, or where, as in this case, the lawful holder had been deprived of it on the promise, ruse or pretense that one of the parties bound thereon would join in the execution of a renewal.

Appellant urges estoppel against the substituted plaintiff based upon the fact that in the course of the trial Barnhill was shown to have accepted a receipt from the bank in January, 1924, for the return of the renewal note of January, 1923, which read:

"Received of Mr. Barnhill note of Charles Sharp in the amount of $3,000 to collect."

From this it is argued that Barnhill must have understood that it was the renewal note alone, without any conditions, which was pledged or assigned to him to secure the return of the bonds he had

loaned to the bank. This incident did serve as a cue for a searching cross-examination of Barnhill, under which his testimony did not stand up very well, and doubtless counsel for defendant worked the phraseology of the receipt and Barnhill's poor showing on cross-examination before the jury for all they were worth. But the jury had less difficulty in seeing the essentials of the transaction than Barnhill had in explaining it. In any event, the point that the acceptance of the receipt with its recital "to collect" the renewal note of January, 1923, estopped Barnhill to maintain the action on the note of July, 1922, cannot be sustained. Defendant did not rely on the recitals of that receipt. He did not alter or prejudice his own position on account of it. None of the essential elements of estoppel appears which would permit defendant to invoke that rule of equity against the substituted plaintiff.

Error is also assigned on the instructions. One of these told the jury how far defendant Joseph Sharp would be liable if he signed the note of July 28, 1922, at the same time it was signed by Charles H. Sharp. The objection to this instruction is that there was no evidence that Joseph Sharp signed the note at the same time it was signed by his son. However that may be, the jury's fourth special finding settled that particular fact in defendant's favor, so the question whether there was any evidence that father and son signed the note at the same time is no longer material.

The same instruction is subjected to another objection because it told the jury that the father would be liable although he did not personally receive any money or benefit from the note. Under the terms of the note both signatories were comakers and consequently both were bound. (*Bank v. Bowdon,* 98 Kan. 140, 157 Pac. 429; *Bank v. Watson,* 99 Kan. 686, 694, 163 Pac. 637.) Money loaned or credit extended to his son, or earlier indebtedness of the son canceled, was all the "benefit" required to bind Joseph to its payment. In 1 Randolph on Commercial Paper (2d ed.), § 447, the elementary rule is stated:

"Although commercial paper must be supported by a legal consideration, it is not necessary that the consideration should be one moving to the party himself. Thus, a consideration to one of two joint makers may bind both." (See footnote annotations.)

It is also contended that the defendant was entitled to judgment on the special findings of the jury. These have been critically examined as well as the argument of appellant based thereon. The

court is not so inclined. The special findings are not inconsistent with the general verdict; and in the rather complicated circumstances of the case we concur with the trial court in holding that the jury did a rather painstaking job and reached a just and equitable result.

The judgment is affirmed.