No. 32,849

THE FIRST NATIONAL BANK OF WINFIELD, *Appellant*, v. EDWIN L. HEPLER, *Appellee*.

(58 P. 2d 87)

Opinion filed June 6, 1936.

*Harry O. Janicke* and *John A. Herlocker*, both of Winfield, for the appellant.
*S. C. Bloss* and *Harold W. Herrick*, both of Winfield, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This was ·an action on a promissory note by the payee against the maker. The defense was lack of consideration and that the note had been executed at the request of and for the accommodation of the payee. A jury trial resulted in a verdict and judgment for defendant. Plaintiff has appealed and contends that judgment should have been rendered for plaintiff, that defendant was estopped from setting up the defenses relied upon, and that the court erred in admitting certain evidence and in the giving of instructions.

Briefly stated, the pleadings and evidence on behalf of defendant tend to show the following facts: In 1919 a Mr. Hoover and his two sons were conducting an automobile and tractor business at Winfield under the name of the Hoover Auto & Supply Company. They had an extensive acquaintance and good standing and had worked up a large business, which took much more money than they had to finance it. They had become heavily indebted to the plaintiff bank. Its loans represented about all the money there was in the business. A Mr. Gunderson had conducted an automobile business at Winfield and had been a customer of the plaintiff bank. He had handled his business with signal success from a financial

viewpoint, but had sold it out and had gone to Iowa. In an effort to avoid a heavy loss which seemed imminent in its loan to the Hoovers, and after getting Mr. Hoover's consent, the bank wrote to Gunderson on December 27, 1919, and advised him of the situation and of its desire to have him come back to Winfield and manage the financial affairs of the Hoover company, with the hope that it would pay the bank in full and possibly have the nucleus of a business which could go on, in which event he might become a partner with the Hoovers. It was stated in the letter that more money would be needed to conduct the business for a time, which the bank would furnish. Gunderson was asked to wire his answer. After an exchange of several telegrams Gunderson returned to Winfield, where the matter was discussed, with the result that, at the request of the bank, in March or April, 1920, Gunderson was permitted by the Hoovers to take complete charge of all their books and financial matters in an effort to handle them so the bank could be paid out. His salary was $250 per month. The record does not disclose the exact amount of the indebtedness of the Hoover company to the bank at that time, or how much money was later advanced. Gunderson managed the business in such a way that this indebtedness was rapidly decreased. At some time not definitely shown, within a few months, the officers of the bank represented to Gunderson that the bank examiners were criticizing the bank for carrying the Hoover company notes, and that the matter could be better handled in the bank if Gunderson would give his note to the bank in lieu of the Hoover company notes; that Mr. Robinson, then president of the bank, who was handling the matter with Gunderson, assured him that this request was only to enable the bank better to handle the matter, not to indicate any personal liability; that it would have nothing to do with the arrangement they had with him, or with his liability for the notes, and that Robinson himself would endorse the note. On this request and representation Gunderson gave his note, endorsed by Robinson, to the bank in lieu of the Hoover company notes, which were taken out of the bank. The amount of this first Gunderson note is not shown. It was renewed, at reduced sums, from time to time. Robinson was supposed to endorse all of them, and did the first few, but omitted to endorse the later ones.

By July, 1920, an opportunity presented itself to sell the bulk of the Hoover company business. That was done and the proceeds,

about $21,000, was applied on the indebtedness to the bank, reducing it at that time to about $5,600. There were some notes and accounts, and some merchandise, of the Hoover business not sold at that time. These notes and accounts were to be collected and the merchandise sold and payments made to the bank, as rapidly as that could be done. Gunderson continued to look after that business until May, 1921, when he moved to California. By that time the indebtedness to the bank had been reduced to $2,600.

The appellee, Hepler, was the agent of the Standard Oil Company at Winfield and transacted business with the plaintiff bank. He was also acquainted, and on friendly terms, with Gunderson, both before he went to Iowa and since. He had no interest in the business of the Hoover company and no liability for its debts. After Gunderson had signed the note to the bank in lieu of the Hoover note, as above mentioned, the officers of the bank explained to Hepler what they were doing in closing up the Hoover company business and asked him to sign the note as an accommodation to the bank in carrying the matter on its books, and explained to him that there was no intention that there should be any personal liability on the note, and that Robinson, of the bank, would endorse it. Thereafter, at the request of the bank and on similar representation, Hepler signed the subsequent notes. After Gunderson went to California, Hepler, at the request of the bank, or of Gunderson, made some collections of the old Hoover company assets and paid them to the bank, which reduced to $1,900 the amount of the note finally sued upon. Sometime in 1927 or 1928 the vice-president of the plaintiff bank stated to Hepler that the bank examiner did not know Gunderson and would rather his name would not be on the note, and asked Hepler if he would sign it alone. Hepler stated it did not make any difference to him and that he would keep Gunderson's note in his own safe. It appears that he later got a note from Gunderson, which he kept. Thereafter Hepler signed several renewals of the note to the bank. He paid the interest to the bank at each time it was renewed. This was done up until August, 1933. The interest Hepler paid was sometimes from proceeds of the old Hoover business, but on a few occasions he had paid it himself. When that was done he was always reimbursed by Gunderson, except for a part of the last payment. After Gunderson went to California he endeavored to get into business there, and in a conference with his banker gave the plaintiff bank as reference.

Plaintiff wrote the California bank in answer to its inquiry as to Gunderson, speaking highly of his ability and his integrity, and specifically mentioned that Gunderson had been in business at Winfield, which he conducted successfully, but had sold it out and gone to Iowa; that the bank had become overloaned to an automobile sales company in such a way that it was likely to sustain a heavy loss; that it had induced Gunderson to return to Winfield and take charge of it, and that he had done so successfully, so that all creditors were paid.

In September, 1932, the plaintiff bank wrote Gunderson about the payment of the note which the bank held, being a remnant of the note Gunderson had originally signed, but on which then only Hepler's name appeared, called his attention to the fact that it was his original obligation, and urged its payment, and criticized him sharply for not having done so previously. Answering that, Gunderson reminded the bank of its original agreement with him—that he was not to be liable for any obligations of the Hoover company to the bank; that he had signed the note to the bank in the first instance only at the bank's request and to accommodate it in the handling of its affairs; that Robinson had assured him that the bank would never hold him liable on it, and that he would endorse the note, and had endorsed the note in the first instance, and was supposed to endorse each of the renewals, and asked the bank to carry out its original agreement and relieve both him and Hepler of any liability.

In the meantime the First National Bank of Winfield had been consolidated with the Citizens National Bank of that place under such terms that the name of the First National Bank was retained, but its officers were replaced by officers of the Citizens National Bank, so that none of the officers of the plaintiff bank had any personal knowledge of the business affairs of the bank with the Hoover company and Gunderson and Hepler except what was disclosed by the bank's records. Plaintiff's position in the matter was further complicated by the fact that the president and cashier of the bank at the time the Hoover business was being cleaned up, and who had handled the matter, had died.

While Gunderson was not sued in this action his testimony was received. In explanation of why he forwarded to Hepler money paid by him in interest on the later renewals he stated he did so simply to avoid any action being brought against him in California,

with resulting injury to his business. His testimony was to the effect that he never had any financial interest in the Hoover company business; that he took charge of it at the request of the bank, on a salary; that he never received any consideration for any note he signed to the bank in connection with that business, and signed such notes only at the bank's request and upon the representation that it would enable the bank to handle its business in a more satisfactory manner, and hence would be an accommodation to the bank; that he never requested Hepler at any time to sign the note as comaker or surety for him, and that his understanding was that neither he nor Hepler had any personal liability to the bank on the notes.

Hepler testified that he was never asked by Gunderson to sign the note; that the bank officials requested him to do so, representing that it would be to the bank's advantage in handling its business, and assuring him that it would be used for that purpose only and not as an evidence of any liability on his part to the bank.

There was evidence that at one time Hepler executed a bill of sale to Gunderson for an interest in the Hoover Auto & Supply Company business. On behalf of defendant there was evidence that Robinson, the then president of the plaintiff bank, prepared that instrument, as he did other documents connected with the Hoover business, and had them executed; that this bill of sale never was delivered; that it represented no interest Hepler ever had in the business, but that it and other papers made out and executed were to be used only in the event the bank and other creditors were fully paid.

Appellant's contention that defendant, under the facts, should have been held estopped, and that judgment should have been directed for plaintiff as a matter of law, cannot be sustained. Under the defense pleaded and the evidence adduced the question of defendant's liability was for the jury. The matter, from any viewpoint, had been permitted to drag over far too many years. As to each of the parties the record discloses something apparently at variance with the position now taken, but the weight of all of that was for the jury. There was fair ground for the jury to conclude, as evidently it did, that the indebtedness to the bank originally was that of the Hoover company, and that what Gunderson did under his employment, and what he and Hepler did with reference to executing instruments, was done at the request of and for the benefit and the accommodation of the bank. There is no serious contention

that any consideration moved from the bank either to Gunderson or to Hepler for the notes executed by them. The defense that a note was executed without consideration and for the accommodation of the payee is always available as between the parties. These views accord with the former holdings of this court. (See *Means v. Bank,* 97 Kan. 748, 156 Pac. 701; *Bank v. Watson,* 99 Kan. 686, 163 Pac. 637; *National Bank v. Stroup,* 104 Kan. 11, 177 Pac. 836; *National Bank v. Williams,* 117 Kan. 501, 232 Pac. 252; *Swan Savings Bank v. Snyder,* 124 Kan. 827, 262 Pac. 547; *Kershaw v. Cozad,* 137 Kan. 128, 19 P. 2d 452; *Durham State Bank v. Wolf,* 142 Kan. 775, 51 P. 2d 980.)

Appellant contends the court erred in permitting Hepler to testify in his direct examination that he never had any financial interest in the Hoover company in view of the fact that the evidence elsewhere discloses that on one occasion he executed a bill of sale for a part interest. There is testimony pertaining to who prepared this bill of sale, the circumstances under which it was executed, and the purposes of it. Among other things, the court submitted that question to the jury. It all went to the weight of the testimony. We think there was no error in the court's ruling on this point.

Appellant contends the court erred in admitting in evidence the copy of the letter written by plaintiff to the California bank for the reason there was no proper showing the original could not be produced. There was a shortage of a definite showing on that point, but we do not regard the ruling of the court as seriously erroneous. The fact that the letter was written is not denied or seriously controverted. More than that, its contents pertinent to the case were simply cumulative. The fact that the plaintiff bank was in a situation with the Hoover company in which it was likely to sustain a serious loss, and that it had Gunderson come from Iowa to take charge of that business, and that he had done so, was established by other evidence. The letter did not go into detail as to how that was done. The other evidence offered would have sustained the verdict rendered if this letter had not been received in evidence.

Appellant complains of the refusal of the court to give its requested instruction containing a definition of an accommodated party. The instruction as requested was an abstract statement which would have needed something else to apply to the facts of the case. Instead of giving it the court gave an instruction more

specifically applicable, which we deem sufficiently full and complete and more appropriate than the one requested.

Other minor objections are made to the instructions given. We have examined each of these and find nothing substantial in any of them. The record indicates the action was fairly tried and that there is substantial competent evidence to sustain the verdict. The judgment of the court below is affirmed.