W. E. CRUM, JR., Receiver, Appellee, v. H. I. EMMETT, Appellant.

**BILLS AND NOTES:** Accommodation Note—Nonholder for Value. Recovery may not be had by a bank nor by its receiver, in case of insolvency, on an accommodation note *(for which the bank parted with no consideration)* executed by the maker in good-faith reliance on the false representation by the cashier of the bank to the effect (1) that he had purchased of the bank its capital stock to the amount of the note; (2) that he was not permitted by law to execute his own note to the bank; (3) that the state banking department would object to his own note so given; (4) that he desired to substitute said accommo-

dation note to the bank for his own outstanding note to the bank for said indebtedness; and (5) that he would hold the maker harmless.

*Appeal from Taylor District Court.*—A. R. MAXWELL, Judge.

FEBRUARY 5, 1924.

REHEARING DENIED MAY 10, 1924.

ACTION upon a promissory note. Verdict and judgment for plaintiff. Defendant appeals.—*Reversed.*

*Jackson & Jackson* and *J. M. Haddock,* for appellant.

*Frank Wisdom,* for appellee.

STEVENS, J.—This is an action upon a promissory note for $2,000, dated February 10, 1912, due in two years, and drawing interest at the rate of 8 per cent. Plaintiff and appellee is the receiver of the Conway Savings Bank, the payee named in the note. Most of the propositions relied upon by appellant for reversal are based upon exceptions to the instructions given, and the refusal of the court to give other instructions to the jury. A somewhat extended statement of the issues is necessary to a clear understanding of the questions presented for review.

The execution of the note is admitted. The affirmative defenses pleaded by appellant are, in substance, that the note was executed and delivered to W. A. Conway, cashier of the Conway Savings Bank of Conway, Iowa, without consideration and for the accommodation of the bank; that, to induce appellant to execute said note, the said Conway represented to him that he (Conway) had purchased capital stock of the bank, to the amount of $2,000, that it was not permissible for an officer of the bank to borrow that amount from it, that the state bank examiner would object to the loan, and that he desired appellant's note to place in the bank as a substitute for his own; that, at the time of the execution of said note, Conway agreed to deliver collateral security to appellant therefor; that all of the representations of the said Conway were false and untrue, and were made

fraudulently for the purpose of inducing appellant to execute said note; that appellant believed the same, relied thereon, and was induced thereby to execute the note; that the bank paid no consideration whatever for said note; that, shortly before it became due, Conway represented and stated to appellant that he had paid for his stock, and that the note had been canceled and would be returned to him.

By way of amendment to his amended and substituted answer, appellant further alleged that the knowledge of Conway, as its agent, of the above matters was imputed to the bank; that appellant believes that all of said matters were in fact known to the president of said bank; that the said Conway was in charge of its business as cashier and manager, until its affairs were placed in the hands of a receiver.

Appellee, for reply to appellant's third amended and substituted answer and amendment thereto, after admitting certain formal matters, alleged that, in securing the said note, Conway acted in his individual capacity, as the agent of the defendant, and not as the agent of the bank; that the said Conway, so acting, entered into a fraudulent and unlawful conspiracy with appellant to defraud and deceive the officers of the bank, its depositors, and the banking department of the state of Iowa; that it was understood and agreed between them that the said note would be placed in the bank as a pretended asset thereof; that appellant never in good faith intended the same to be a valid and binding obligation, but intended that the said Conway might use and manipulate the same for the purposes stated; and that, in pursuance of said conspiracy, the note was executed and placed by Conway among the assets of the bank. Appellee further alleged that no officer or employee of said bank having authority to do so placed certain credits appearing on the back of said note, but that all of said entries were made by Conway in his individual capacity, and in furtherance of the fraud and conspiracy charged; that no payments of interest or principal were in fact ever made on said note; that, by reason of the execution of said note and the fraudulent agreement entered into by appellant with the said Conway in connection therewith, he was able to carry out the fraud and deception charged, and to unlawfully abstract from the funds of said bank more than

$10,000, and to cover up the same and deceive its officers; and that, by reason of all of said matters, appellant is estopped to allege or prove any of the defenses pleaded to said note, or to deny liability thereon.

The defendant is a farmer, residing near Conway, and was a customer of the bank from the time of its organization. It is admitted that the bank was solvent at the time of the execution and of the maturity of the note. The note, when introduced in evidence, had certain alleged interest payments indorsed thereon. It also bore two numbers of the bank,—one in ink, which had been partially erased, and another in pencil, in the handwriting of Conway. By admitting that, but for the defenses pleaded, appellant would be liable on the note, he assumed the burden of proof. There is little conflict in the evidence. Appellant was the only witness who testified concerning the execution of the note. He testified that Conway, whom appellant well knew as the cashier of the bank, represented to him that he had purchased $2,000 worth of the capital stock of the bank, for which he was indebted to it, and that it was not permissible for a stockholder or officer to give his own note to the bank; and that he requested appellant to give him a note for the amount, upon the assurance that he would protect him from liability thereon, and that he would transfer to him the stock purchased, as collateral security for the note; that no demand was ever made by the bank for the payment of the note until appellee demanded payment thereof, as receiver; that the credits of interest payments on said note were made without his knowledge, and that he never paid anything on the note; that, shortly before the note matured, Conway informed him that he need give the matter no further concern, as the note had been canceled.

Upon cross-examination, appellant was interrogated as to various allegations contained in certain answers, amended and substituted answers, and amendments thereto, which had been superseded by the substituted answer and amendment upon which the case was finally tried, in which, in addition to the matters stated above, it was alleged that Conway further represented and stated to appellant that he wanted to substitute the note in suit for his own, so as to avoid the criticism of the bank examiner.

Appellant further testified that he executed the note in good faith, without consideration, believing that Conway had purchased stock of the bank, as stated, and that he desired the note only for the purposes stated and represented by him; and denied that he signed or delivered the same for any fraudulent or corrupt purpose, or that he conspired with Conway to assist or make it possible for him to give the bank a false credit or to deceive the officers or creditors of the bank or the state banking department.

Appellee, who is president of the Bedford National Bank, and thoroughly familiar with the banking business and the system of bookkeeping generally used thereby, testified that, after a diligent search among the records, and after inspection of the bank books, he was unable to find the slightest evidence that the bank paid any consideration for the note, or that it ever parted with anything therefor. The first entry of the note in the books of the bank is on the journal, under date of March 9, 1914. This was after its maturity. The entry upon the journal was made by the bookkeeper from a memorandum furnished by Conway, and was intended to show the payment of the note in suit by a new note for the full amount of principal and interest then due. A new number was given the old note, and no new one was executed or placed in the assets of the bank. Appellee further expressed the opinion that Conway probably caused the entries to be made upon the journal to cover up his own defalcations from the bank. It is conceded that Conway did not purchase stock of the bank, and that it did not hold his note for $2,000 for which the note of appellant could have been substituted. All of Conway's representations, if made as claimed by appellant, were absolutely false.

The briefs and argument of counsel cover a wide field, including many matters not germane to the questions before us, and we do not deem it necessary to consider separately, or even generally, the fifty-two alleged errors assigned by appellant for reversal.

Many instructions were requested by appellant, but all were marked "refused" by the court. The court, on its own motion, instructed the jury, in substance, that the burden was on the defendant to prove fraud in the execution and delivery of the

note, as alleged, and that, unless same was proved upon the part of Conway by a .preponderance of the evidence, the verdict. should be for the plaintiff; that, before the defendant could, prevail upon the issues of fraud set up in his answer, it was incumbent upon him to prove by a preponderance of the evidence that, at the time of the execution of the note, Conway, as cashier, had the right and authority to make for the bank the statements and representations attributed to him, that same were false and untrue, that they were believed by the defendant and relied upon by him, and that he was thereby induced to execute the note; that, for the said statements and representations to be binding upon the bank, it was further incumbent upon appellant to prove that the said Conway was authorized by its officers and directors to make such false statements and representations, if any were made; that it was claimed by appellant that the note in suit is an "accommodation note" (defining it), and that, if "the party accommodated by the giving of said note, if you find from a preponderance of the evidence that such note was an accommodation note, for which defendant received no consideration, was the Conway Savings Bank, then the plaintiff cannot recover in this action, and your verdict should be for the defendant;" that, if it appeared that the party accommodated was Conway, and not the bank, then it was immaterial whether there was a consideration for the note or not, and want of consideration was no defense thereto if the bank was a holder in good faith for value; that, if the note was received by Conway for the purpose claimed by appellant, and substituted by him in good faith for a note which he was owing the bank, then Conway was the accommodated party, and the bank would be a holder for value; that, if it appeared from the evidence that the acts and agreements of Conway and defendant in connection with the execution and delivery of the note were done in fraud of the rights of creditors, and that by reason thereof creditors were in fact defrauded, action might be maintained by the receiver for the benefit of such creditors, even though the defense of fraud set up by appellant might be a valid defense against the bank in an action on the note; that, if the said Conway was acting in his individual capacity, and not for the bank, in procuring the execution of the note, and in such capacity entered into a conspiracy with the

defendant to defraud and deceive the officers of the bank, depositors, and bank examiner by placing said note in the assets of the bank, then his acts, representations, and agreements with the appellant would not be binding upon the bank; that it is a crime in this state for any officer of a bank to knowingly make false entries in the books thereof or to commit any intentional fraud or to deceive the public or individuals in relation to the financial condition of the bank, and that, if it appeared from the evidence that the said Conway represented to appellant that he had purchased from the bank $2,000 worth of its capital stock, for which he was indebted thereto, that it was not permissible for an officer of the bank to borrow such sum, and that his note would be objected to by the bank examiner, and that he requested the defendant to execute his note to the bank for said amount in order that it might be substituted for the note of Conway, and appellant, in reliance on said representations, executed such note, and appellant intended at the time to assist the said Conway to the extent of permitting him to place said note among the assets of said bank or to enter it upon the records thereof in the ordinary course of business, or intended that same might be exhibited to the bank examiner and officers of the bank as a valid and subsisting obligation, or intended that the said Conway might take up the said note and place appellant's note in place of it, for the purpose of escaping criticism by the bank examiners, or for the purpose of having it considered as a valid and binding obligation of appellant to the bank, then the fact that the said Conway in fact deceived appellant and intended to deceive the bank examiner and others, would not be a defense to the note in the hands of the receiver, if it also appeared that the bank was insolvent at the time it went into the hands of a receiver, and that its assets are insufficient for the payment of its depositors; that if, in the execution of the note, the appellant intended thereby to join in or assist the said Conway in deceiving the bank examiners or any other persons as to the means and responsibility of said bank, then it would be no defense thereto that appellant was himself deceived by the said Conway, while they were engaged in an undertaking to deceive the bank examiner or any other person as to the means or responsibility of the bank.

We set out the above summary of a portion of the court's charge as much for the purpose of showing the fullness with which appellee's theory of the case was submitted to the jury as to disclose errors apparent therein. Although most of the numerous instructions requested by the appellant were more or less inaccurate in their statement of the law, they fairly presented appellant's theory of his defense. .

An accommodation note, in the hands of a holder for value, under Section 3060-a29 of the 1913 Supplement to the Code, is not subject to the defense of want of consideration. If the note had been used by Conway for the purpose assigned by him, and for the purpose which, if appellant's testimony is true, induced its execution, the bank would not have been defrauded, nor the examiner or any other person deceived thereby. The bank would have been a holder for value, and the note a valid and binding obligation of the maker's. Appellant had a right to assume, when he signed the instrument, that Conway was telling him the truth, and that the note would be used for the purposes for which it was given. It may sometimes occur that the maker of an accommodation note may be estopped, when the action is brought by the receiver of the bank to which the same has been transferred without consideration, to set up a defense thereto which would have been available to him as against the bank. *Skagit State Bank v. Moody*, 86 Wash. 286 (150 Pac. 425); *Arthur v. Brown*, 91 S. C. 316 (74 S. E. 652); *Lyons v. Benney*, 230 Pa. 117 (79 Atl. 250); *First Nat. Bank v. Felt*, 100 Iowa 680; *Woodbury v. Glick*, 151 Iowa 648.

In so far as the above cases sustain the exception to the general rule, which undoubtedly is that the receiver is in no better position than the bank, and that any defense to a note which would be good against the former may be interposed against the receiver, they proceed upon the theory that one who executes a note executed without consideration to a bank in furtherance of a scheme of its officers to deceive the bank examiner and its officers should not be permitted, after the bank has passed into the hands of a receiver, to deny liability.

Appellee does not claim that appellant was liable to the bank on the note, unless it was a holder for value. The contention is that appellant is estopped by the alleged fraudulent

agreement or conspiracy with Conway to set up this defense as against the receiver, it being conceded or satisfactorily proved that the bank, when it went into the hands of a receiver, was in fact insolvent. The most that can be said for this contention by appellee is that the question of the alleged fraud and conspiracy was for the jury. If appellant in fact executed the note in good faith, and without knowledge of the falsity of the representations of Conway, then certainly he is not estopped to set up any defense against the note in this case that would have been available to him if the bank had brought suit thereon, unless some distinction is to be made because of the insolvency of the bank. We perceive none in this case. Perhaps, in view of a possible retrial of the case, we should forego comment upon the evidence, but we deem it for the best interests of all concerned to say that we find no direct evidence of fraud or bad faith on the part of the appellant. If his testimony is to be believed, it is little short of conclusive upon this point. It is true that the note was executed by appellant with the understanding that it was to be placed in the bank to take the place of Conway's note, and that one of Conway's purposes was to secure a note that would not be objectionable to the state banking department. This was in no sense a violation of any of our banking statutes. The purpose was to secure for the bank a perfectly valid note. The bank's assets would not have been depreciated in any respect by the exchange. It is significant in this connection that Conway, according to the testimony of appellant, agreed to transfer the stock purchased by him of the bank to appellant, as collateral security for the payment thereof. Appellant must have understood that the note, although executed without consideration, would, in the hands of the bank as a holder for value, be a valid and binding obligation. Although requested by appellant, the court did not, in any portion of its charge, submit appellant's theory of this defense to the jury, or clearly and definitely state that, if he acted in good faith in the execution of the note, and the bank was not a holder for value, a verdict should be returned in his favor. The general purport and tenor of the court's charge was unduly favorable to appellee, and, to a considerable extent, apparently overlooked appellant's theory of the issues and the evidence offered upon the trial.

We do not deem it necessary to point out all of the errors in the court's charge. What we have said is sufficient to indicate our view that the case was not clearly submitted to the jury, and that the charge was misleading. Perhaps we should say in this connection that the evidence fails to show that any officer of the bank knew of the existence of the note or had actual knowledge of the bad faith and fraud claimed to have been practiced by Conway upon appellant. The bookkeeper testified that she first saw the note in the hands of the receiver, and none of the officers of the bank who testified were able to recall that they ever saw it. There is no evidence that it was ever exhibited to the bank examiner. The Uniform Negotiable Instrument Law clearly defines an accommodation party, and also his liability. Section 3060-a26 of the 1913 Supplement to the Code, provides that:

"Where value has been at any time given for the instrument, the holder is deemed a holder for value in respect to all parties who became such prior to that time."

If the note in suit had been delivered to the bank for a consideration, or as a substitute for the note of Conway, the bank would have been a holder for value. Unless it was such holder, it is subject to whatever defenses appellant might have urged against it in the hands of Conway. Appellant was, therefore, entitled to have the defenses pleaded and available to him submitted to the jury by clear and explicit instructions.

For the reasons pointed out, the judgment of the court below must be, and is,—*Reversed.*

ARTHUR, C. J., DE GRAFF and VERMILION, JJ., concur.