## Denny, Banking Commissioner, v. Fishter.

(Decided March 20, 1931.)

128

BROWNING, REED & ZEIGLER for appellant.

B. S. GRANNIS for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

In September, 1926, the Farmers' & Traders' Bank of Maysville held the note of Pickett and Burgess in the principal sum of about $12,000, secured by a mortgage on a piece of real estate in the city of Maysville. This note was long past due, and its makers not only were behind in their interest payments, but were also insolvent. The note was indeed a frozen asset. The bank at that time was getting in a more or less straitened condition, and in order to liquefy this frozen asset, its vice president, H. W. Cole, devised the following scheme: The bank procured the appellee, George H. Fishter, to take a conveyance of the mortgaged property from Pickett and Burgess, the bank canceling its mortgage note. Fishter then placed a first mortgage upon the property with the Mason County Building & Saving Association in the principal sum of $7,500. The proceeds of this mortgage were paid over to the bank. Fishter then executed a second mortgage to the bank in the principal sum of $5,250, payable by four serial notes of $1,000 each, and one note for $1,250, due in 1, 2, 3, 4, and 5 years, respectively from their date. At the same time the bank and Fishter executed this contract in duplicate:

"This contract made and entered into this 27th day of September, 1926, by and between Geo. H.

Fishter, party of the first part, and the Farmers & Traders Bank of Maysville, Ky., party of the second part.

"Witnesseth: That whereas said Geo. H. Fishter and Katherine G. Fishter, his wife, have this day conveyed to said Farmers & Traders Bank of Maysville, Ky., certain property in the City of Maysville, Ky., situated on the south side of Second St. and formerly owned by C. S. Burgess and B. O. Pickett, and whereas said Geo. Fishter is indebted to the Mason County Building Association under a mortgage on said property for $7,500.00 and is indebted to the Farmers & Traders Bank of Maysville, Kentucky, under a mortgage for ————.

"Now it is agreed between the parties as a consideration for said deed that should said Farmers & Traders Bank desire to record said deed above referred to it will cancel said mortgage indebtedness owing to it and assume the payment of any balance on said mortgage owing to the Mason County Bldg. Assn. above described.

"It is further agreed between the parties, and said Farmers & Traders Bank hereby agrees, that should said Fishter at any time so demand it will upon sixty days notice cancel said mortgages as above referred to provided said Fishter has not in the meantime incurred any other obligation against said property.

"In testimony whereof, witness the signatures of the parties of the first and second part in duplicate the day and year first above written.

"Geo. Fishter

"Farmers & Traders Bank of Maysville Ky.
                    "By H. W. Cole, V. Pres."

Fishter claims that at the time this contract was executed the deed referred to therein was made by him and given to the bank. The banking commissioner, however, has never been able to find it among the records of the bank or elsewhere. The record shows beyond a peradventure of a doubt that Fishter entered into this transaction as a pure accommodation to the bank and in a friendly effort to help it and with no positive idea of committing any fraud upon any one. After the property had been deeded to Fishter, he collected all the rents

arising from it and turned them over to the bank, which put them in a separate account and used them for the purpose of paying the weekly dues owing the building and saving association on the first mortgage. In February, 1927, and before the first note of this second mortgage became due and while all these second mortgage notes were still in the ownership and possession of the bank, the state banking commissioner took charge of the bank as an insolvent institution. In September, 1927, the building and saving association brought suit to foreclose its mortgage and it made the banking commissioner a party defendant. He filed his cross-petition against the appellee seeking a foreclosure of the second mortgage the bank held on the property. Later the property was sold, for the sum of $10,000, under the judgment in favor of the building and saving association, which provided that any excess proceeds should be held until the issues between the banking commissioner and Fishter had been adjudged. This sale price together with interest that accrued upon it, amounted at the time of distribution to $10,700, and, after paying the building and saving association, and the court costs, there was left $2,774.90, which was paid over to the banking commissioner on the second mortgage. There was left then, in the case, only the liability of Fishter for the difference between the principal sum of the second mortgage and interest and the amount which the banking commissioner had received in the distribution of the sale price of the property. Fishter defended the action on the ground that he had executed these notes representing the second mortgage purely as an accommodation to the bank and without consideration, and that he was simply acting as agent for the bank or as its trustee, and that in no event was he personally liable on these second mortgage notes. By reply the bank traversed the affirmative matters of the allegation in the answer and also pleaded that Fishter, having executed these second mortgage notes which were placed among the assets of the bank as he knew would be the case, and which were regarded by the bank examiners as part of the assets of the bank prior to its being taken over for liquidation by the state banking commissioner, was estopped to deny liability on these notes; deposits having been made in the bank after their execution and their proceeds being necessary to help discharge the liabilities

of the bank. Some amended pleadings were filed which added nothing to these issues in the case. On final hearing, the court dismissed the cross-petition of the banking commissioner against Fishter, and from that judgment this appeal is prosecuted.

We need not discuss the question ably argued by appellee's counsel that if the bank, had it been the plaintiff in this suit against Fishter, could not have recovered, then neither can the banking commissioner, because he has no further or wider powers or rights than the bank would have had, since he is in truth but a receiver and represents only the bank, because the premise upon which this argument is rested has been heretofore disallowed by this court in the case of American Southern National Bank v. Smith, Banking Commissioner, 170 Ky. 512, 186 S. W. 482, 483, Ann. Cas. 1918B, 959. In that case, the George Alexander & Co. State Bank in Paris, Ky., had borrowed from the American Southern National Bank in Louisville a sum greater than its charter permitted. It had deposited with the Louisville bank collateral for the loan, and the Louisville bank, after the insolvency of the Paris bank, had sold that collateral and paid off the loan. The banking commissioner, who had charge of the Paris bank, brought suit to recover the proceeds of the sale of the collateral in excess of the sum which the charter of the Paris bank authorized it to borrow. We now quote from the opinion:

"It is first insisted that the right to bring this character of action, if one exists at all, is not vested in the banking commissioner; but the relief sought, if available at all, can be prosecuted only by a creditor, or creditors. In other words, that the act of 1912 and the general law of the land, as is announced by the courts and textwriters, do not vest the commissioner with any greater powers or rights than were possessed by the insolvent bank, whose business he is engaged in winding up, and that the bank, as such, would not have had the right to maintain this action without at least tendering back to the defendant the consideration which it received for the two notes. It seems to be conceded that the execution of the two notes by the Alexander Bank was ultra vires, at least as to the excess of $10,000. The decisions of the courts in regard to the powers and rights of a receiver, or as assignee for the benefit of creditors, are not, by any means, binding prece-

dents in the determination of the question which we have before us. The banking commissioner is not a receiver appointed by the court, nor is he an assignee for the benefit of creditors in the ordinary acceptation of that term. In the one case, the authority, rights, and powers of the receiver are qualified and restricted by the court appointing him, while the assignee for the benefit of creditors obtains his authority, rights, and powers from his assignor; and, in the very nature of things, he cannot confer upon his assignee that which he did not possess.

"The banking business throughout the country has, in modern times, grown to such an extent that almost the entire commercial activities of the country are conducted through and by banks. They are the repositories of the larger per cent. of all the money of the country, and because of these and other conditions, through and by which they are so intimately associated, with business and with the individual citizen, the countries under which they are organized have long since considered them appropriate institutions for statutory regulation, to the end that their solvency may be safeguarded, and that the citizen depositing his money therein may be assured, as much as possible, that upon demand it will be forthcoming. Sound public policy, therefore, has long since determined that this character of corporations is subject to the visitorial powers of the government creating them, which is manifested by the character of legislation embodied in the act of 1912, passed by our Legislature. . . .

"In furtherance' of these general purposes, which it is evident the statute was intended to foster and encourage, we are disposed, if the question was one of first impression, to construe the statute so as to vest the banking commissioner, when winding up the affairs of an insolvent bank, with all the power and authority in the collection or the distributable assets of the bank, that a creditor himself would have in a proceeding which he might institute for that purpose. . . .

"Considering the purposes and intention of the Legislature in enacting the law, as well as the tendency of the courts to facilitate as much as possible, and with as little cost as possible, the winding up of insolvent banks, as well as the trend of this court, as exhibited in the opinions, supra, we are convinced

that this action was properly brought by the banking commissioner."

Thus we see that, under our statute, the banking commissioner may maintain not only any action the insolvent bank could have, but also such actions as a creditor or creditors could to collect in the assets liable for the bank's liabilities.

We then have presented the question whether, as against the creditors of the bank, Fishter is estopped to claim that the notes he executed and which were carried among the assets of the bank from the time of their execution and which after the bank's insolvency are needed to help discharge the liabilities of the bank which are far in excess of its assets, including stockholders' liability, deposits to a large amount having been made since their execution, are not valid and binding obligations upon him. That he is, the case of First State Bank of Nortonville v. Morton, 146 Ky. 287, 142 S. W. 694, foreshadows. But we have been cited to no case decided by this court where the precise question here presented has been determined.

As pointed out by the author of the note in 38 Harvard Law Review, 239, entitled, "Liability on a Note Given to a Bank as a Fictitious Asset," the courts to which this question has been presented have treated it along one or more lines of four distinct doctrines in the law: (1) Consideration; (2) the parol evidence rule; (3) illegality of contracts; (4) estoppel. After pointing out the difficulties which the first three doctrines encounter, the author says of the fourth:

"Some courts are content to declare it against public·policy that one who has defrauded the bank examiner and the creditors should escape liability. (See Pauly v. O'Brien, 69 F. 460, 461 ([C. C.] S. D. Cal. 1895); Lyons v. Westwater, 181 F. 681, 682 ([C. C. A.] 3rd Circ. 1910.) Others analyzing further what they have in mind, hold that the maker is estopped to deny liability on the note. (Sickels v. Herold, 15 Misc. Rep. 116, 36 N. Y. S. 488 (1895), aff'd in 149 N. Y. 332, 43 N. E. 852 (1896); Murphy v. Gumaer, 18 Colo. App. 183, 70 P. 800 (1902). But the bank, being a party to the transaction, cannot plead that the maker is estopped. In general, the receiver is in no better position than the bank. (Steelman v. Atchley, 98 Ark. 294, 135 S. W. 902

[32 L. R. A. (N. S.) 1060] (1911). (See High, Receivers, 3 ed., secs. 204, 205.) Exceptions are made to this rule, however, in respect to matters wherein he represents creditors. (Franklin Nat. Bank v. Whitehead, 149 Ind. 560, 49 N. E. 592 [39 L. R. A. 725, 63 Am. St. Rep. 302] (1898); State Bank of Pittsburg v. Kirk, 216 Pa. 452, 65 A. 932 (1907). See 5 Thompson, Corporations, 2 ed., secs. 6388, 6396.)

"Can the creditors establish the elements of estoppel? (For the necessary elements of estoppel, see Ewart, Estoppel, 10.) By giving his note the maker causes a misrepresentation of the bank's assets. The misrepresentation may reach creditors through various channels, among which are published statements of the bank and reports of the bank examiner, an official created by the public to protect creditors. The very continuance in business of a bank which would have been closed by the examiner but for the deception is in a sense a misrepresentation. Many creditors may suffer change of position upon the faith of this misrepresentation. Is it fatal to estoppel that every creditor has not changed his position? Ordinarily the estoppel-asserter cannot benefit by the change of position of another person. (Heane v. Rogers, 9 B. & C. 577 (1829).) Where it becomes necessary to treat the estoppel-asserters as a class, however, a departure from this rule would seem justified; (In re General Provident Assurance Co., L. R. 9 Eq. 74 (1809). See Ewart, Estoppel, 141, 142) likewise, a prima facie presumption that some creditors have acted upon the faith of the misrepresentation. (See Waters' Appeal, 35 Pa. 523, 527 [78 Am. Dec. 354] (1860).) Thus it may be possible to support many of the cases on the doctrine of estoppel. But the limitations of the doctrine should not be ignored. Here it is founded upon loss to creditors. Therefore, it should not be evoked in a suit by the bank. Nor should it be applied to the extent of the face value of the note where the caused loss is less. (Compare Tobey v. Chipman, 133 [13] Allen (Mass.) 123 (1866), where the full value of the note was recovered regardless of the extent of the loss, with Campbell v. Nichols, 33 N. J. Law, 81 (1868); and Payne v. Burnham, 62 N. Y. 71 (1875), where only

the loss was allowed to be recovered.) And finally, if there has been no caused loss, the suit should fail. The receiver sues to protect private rights, not to punish falsifiers.''

The case of Cedar State Bank v. Olson, 116 Kan. 320, 226 P. 995, 997, cited in the foregoing excerpt, is criticized in a footnote to that excerpt because the bank itself was allowed to recover on the note given to cover up excess loans made to others. But the reasoning of the court in support of an estoppel, whether sound or not when the bank is the plaintiff, is, to our minds, certainly sound where the creditors or the banking commissioner representing them is the plaintiff. We quote:

"The banking business is fraught with public concern. Banks do business through permission of the law subject always to its provisions for the protection of depositors, creditors, and stockholders. Public faith, credit, and honesty in business transactions are a bank's main assets. Banks are subject to public regulation to the end that they may make proper loans and freely contract debts with depositors and others, to achieve the ends of legitimate business. The statute requires careful examination by the bank commissioner periodically in order that those who deal with banks may not be misled by appearances. To sanction any arrangement, whereby the real assets and securities of a bank are to be regarded as less than or different from the apparent assets and securities, would tend to defeat the entire purpose of the regulatory statutes. Parties may not participate in a transaction, the object of which is to give to the assets of a bank a favorable appearance for purposes of examination, but less favorable for purposes of liability or enforcement. The defendant, having signed the note with full understanding of its purposes, cannot be relieved of liability. Considering the note as a part of the bank's assets, an understanding or agreement of nonliability was neither proper nor tenable. It amounted to a fraud upon the depositors, stockholders, and the public to agree that the obligation which the defendant assumed was, in fact, not an obligation. It amounted to a fraud upon the depositors, creditors,

and stockholders of the bank and a fraud upon the public because it gave assurance that the assets of the bank were sound. Having given the note with the avowed object of having it appear as an asset for purposes of examination, she is estopped from asserting a secret understanding that she was not to be held liable. The law will not countenance contracts that are against the public good, and, therefore, forbidden by public policy.''

See, also, Brannan's Negotiable Instruments (4th Ed.) 285 et seq., where the cases in accord with these views are collected.

It follows that Fishter is in this suit estopped to deny his liability on the notes here in question. All of the assets the bank had when it failed are not sufficient even when there is added to them these notes and even stockholders' liability to discharge its liabilities. People who deposit money in bank do so on the idea that it is a solvent concern, that its assets, the major portion of which is always ''loans and discounts,'' truly represent bona fide loans and discounts and not some scheme devised to give to that item a fair appearance different from reality. Fishter may have acted in the best of faith and as an accommodation to the bank, but by his conduct he had occasioned loss to others who had no knowledge of his secret arrangement with the bank. As between him and them, he must bear the loss. The judgment is therefore reversed, with instructions to enter a judgment against the appellee for the amount due on the notes subject to the credit of the amount the banking commissioner has heretofore received in the distribution of the proceeds of the sale price of the mortgaged property

Whole court sitting.