**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**Johnny VINEYARD, Defendant.**

No. CA–5–912.

United States District Court,
N. D. Texas,
Lubbock Division.

June 2, 1972.

Warlick Carr, Key, Carr, Evans & Fouts, Lubbock, Tex., C. Edward Fowler, Jr., Bailey, Williams, Westfall & Henderson, Dallas, Tex., for plaintiff.

Madison Sowder, Thomas J. Griffith, Griffith, Brister & Benson, Lubbock, Tex., for defendant.

## MEMORANDUM OPINION

WOODWARD, District Judge.

The above entitled and numbered cause was called for trial on the 18th day of May, 1972, with plaintiff's representative and defendant both present and represented by counsel. The parties announced ready for trial, and the issues of fact and law were presented to the Court without a jury.

Upon conclusion of the testimony and the arguments of counsel, the Court directed that counsel file additional statements and briefs. After considering the entire record in this case, the Court is of the opinion, as hereinafter stated, that plaintiff should recover of and from defendant, and files this memorandum opinion as its findings of fact and conclusions of law in connection therewith. The stipulations of the parties as shown in the pre-trial order are incorporated by reference as additional findings of fact in this case.

This is a suit by the Federal Deposit Insurance Corporation (FDIC) seeking judgment against Johnny Vineyard on a note given by Vineyard to the Lorenzo State Bank of Lorenzo, Texas, and later acquired by FDIC as part of the transactions surrounding the closing of that bank.

From the testimony and evidence presented at the hearing of this case, it appears to the Court that the following are the facts that surround the transaction in question:

In the first part of 1967, one Jimmy Joiner, a customer of the Lorenzo State Bank, asked its president, Mr. A. W. Lott, for a loan of $80,000.00 which was in excess of the legal loan limit of the bank. As the bank was unable to make the loan, Lott executed a personal note payable to the Citizens National Bank at Lubbock, Texas for $80,000.00 and in turn loaned this money to Joiner.

Later in that year, on or about November 1, 1967, the note to the Citizens National Bank became due and Lott authorized the Citizens National Bank to charge the correspondent account with the Lorenzo bank for $82,676.67, which was the principal amount of the note plus interest. In effect the bank at Lorenzo paid Lott's personal indebtedness by this transaction. Joiner gave a check to cover the advancement, but did not have sufficient funds to cover the check, and the bank carried it illegally as a cash item.

Lott demanded that Joiner pay the note, but he was unable to do so. About thirty to forty-five days later, in the middle of December 1967, Joiner and the defendant in this case, Johnny Vineyard, came together to the Lorenzo State Bank. There, according to Lott's testimony, Vineyard stated that he would loan the necessary money to Joiner to pay off the $82,676.67 indebtedness. Vineyard denies any such conversation. About two days later, Vineyard gave his check on the American State Bank at Lubbock for $51,436.67, and further gave to the Lorenzo State Bank his note dated December 14, 1967 in the amount of $31,240.00. The total of the check and note was then applied to the payment of Joiner's indebtedness to A. W. Lott and to remove the Joiner check from the bank's cash items.

The note was secured by an assignment from Vineyard to the bank of certain hail crop insurance notes that he held from his customers.

On the same date, December 14, 1967, Vineyard wrote a check to the Insurance Company of North America (INA) in the amount of $85,176.67. This was exactly $2,500.00 more than the sum represented by his check and note to the bank, and the evidence shows that Joiner owed this $2,500,000 to Vineyard.

Vineyard then sent his check to INA together with another check for $23,105.15 on a Lubbock bank to clear the amount of money he owed INA for the premiums on policies sold by him.

The $85,176.67 check was presented to the Lorenzo State Bank for payment through the Federal Reserve Bank in early January 1968, but the check

was not paid as Vineyard had no funds on deposit to cover it. The check was again submitted through the Federal Reserve Bank for payment on or about January 26, 1968, which was a Friday, and on Monday of that month, January 29, 1968, Vineyard went to the Lorenzo State Bank and at that time gave his note for $85,176.67. This is the note sued upon ·in this action. When this note was received by the bank, the check to INA from Vineyard was honored.

Even if the Court were to accept Vineyard's explanation of the transactions of mid-December, 1967, to the effect that he knew nothing of the use of his note and check to cover Joiner's indebtedness, there is only one plausible explanation of the transaction on January 29, 1968: that Vineyard gave the note sued upon in order to insure the payment of his check in the same amount to INA. Even if he did not know of it before, he surely must have been aware on January 29, 1968, that his previous note and check had been applied to Joiner's indebtedness. Also, the preponderance of the reasonable evidence in this case leads to the finding that on December 14, 1967, Vineyard knew of Joiner's difficulties with the Lorenzo bank and consented to the transaction above outlined, with the expectation on his part that Joiner would in the meantime liquidate some assets and thereby be in a position to cover Vineyard's check to INA.

This conclusion is further buttressed by the fact that Joiner and Vineyard had had business dealings in the past. Specifically, at one time Joiner and a relative executed two $35,000.00 notes payable to the Wolfforth State Bank, Wolfforth, Texas, for the purpose of relieving certain indebtednesses of Vineyard. The consideration for these notes was supposedly a two-thirds interest in Vineyard's insurance agency, which interest was never transferred. It can reasonably be presumed that Vineyard was repaying this favor to Joiner; in fact, Vineyard had on previous occasions lent money to Joiner without any evidence of the loan's being received except for a cancelled check.

To summarize these transactions it is apparent that the defendant, Johnny Vineyard, gave his check and his note to the Lorenzo State Bank to cover the $82,676.67 indebtedness which Jimmy Joiner owed A. W. Lott and which was paid by the Lorenzo State Bank through the Citizens National Bank on the note above described. Vineyard's check to the Insurance Company of North America was for $85,176.67 (which equals the $82,676.67 he advanced for Joiner on December 14th plus $2,500.00 he had previously lent Joiner). Later, Vineyard gave a note for $85,176.67 which was used to pay his own check to INA.

It is Vineyard's position that the check to INA should have been paid out of the proceeds of the note and check on the American State Bank which he gave on December 14, 1967, being Defendant's Exhibits Nos. 5 and 6. It is the position of the plaintiff that these two items were used to pay Joiner's indebtedness and that the note on January 29, 1968, Plaintiff's Exhibit 7, was used to cover Vineyard's check to INA.

The evidence and stipulations in this case reveal that the former Lorenzo State Bank was closed in February 1968 and that the State Banking Commissioner was designated as the Receiver to take over the assets of that bank. Thereafter, a new bank was organized and the Receiver assigned all of the assets of the former bank to the Federal Deposit Insurance Corporation (FDIC). FDIC negotiated a loan to the new bank which was sufficient to purchase from FDIC certain acceptable notes and assets of the former bank. Certain of the unacceptable notes were retained and are still owned by FDIC, and among these is the note sued upon in this case, Plaintiff's Exhibit 7.

Defendant has interposed several defenses to plaintiff's cause of action on the note.

First, defendant asserts that there was a failure of consideration for

the note given on January 29, 1968, in the amount of $85,176.67. On the contrary, the Court has found that that note was given by Vineyard to the bank so that the bank would pay his check in a like amount to INA, and that this was done by Vineyard when he had knowledge of the fact that his previous note and check to the bank, in December 1967, had been used to pay Joiner's indebtedness to the bank and to Lott. There was no failure of consideration as to the note sued upon.

■ Second, defendant interposes as a defense the allegation that FDIC failed to afford him due process and equal protection of the laws under the Fifth and Fourteenth Amendments to the Constitution of the United States. It is defendant's theory that the three-cornered reorganizational transaction among the new bank, the Receiver of the former bank (a state governmental authority) and FDIC (a federal governmental authority), in which the new bank was allowed to select which of the former bank's assets it wished to purchase, resulted in an arbitrary and discriminatory classification. In one class were those creditors of the former bank whose notes were classified as "acceptable," and in the other were those whose notes were found to be "unacceptable" by the new bank. Defendant states that, under the laws of the State of Texas, if the new bank had purchased his note he would have been able to assert a defense to any claim on the note by the new bank under section 3.302 of the Business and Commerce Code of Texas, V.A.T.S., but that since the note is held by FDIC, he is denied this defense under federal law, as hereinafter set forth.

The Court cannot and does not find that there was any discriminatory or arbitrary action on the part of FDIC, or the State Banking Commissioner as Receiver or the new bank, and the Court does not find that there was any lack of due process or equal treatment of laws afforded to the defendant or any member of his "class." In fact the evidence is clear that the notes were classified in accordance with sound banking principles and that the new bank purchased only those notes which it determined were of sound banking quality. In fact, the evidence from a witness called by defendant showed that the selection of the notes to be held by the new bank was made by the new bank's officers with assistance from some officers and directors of the former bank and other outside advice, and that neither FDIC nor the Receiver took any part whatsoever in such classification.

■ Defendant, in a counterclaim, asserts that if he is held liable on the note in question for $85,176.67, he is entitled to have to his credit a deposit or account with the former bank for that amount. Since FDIC has insured the deposits of the former bank, defendant claims that FDIC should be required to pay him the $85,176.67, which was never deposited to his account. Inasmuch as the bank used the proceeds of the note sued upon in this case to pay a valid indebtedness of Vineyard (the check written by him to INA for an amount equal to the note), Vineyard is not entitled to have a checking account or any other account in his favor for this amount, and this defense is not valid.

In view of the above finding, it is not necessary for the Court to determine the question of limitations as to defendant's counterclaim.

■ Finally, Vineyard attempts to raise against FDIC the defense of no consideration and the defense that at the time the $80,000.00 note was executed, A. W. Lott, as president of the bank, told Vineyard that he would never be called upon to pay the note. These defenses would be appropriate to be raised against one who was not a holder in due course. Under section 3.302(c)(1) of the Business and Commerce Code of Texas, one who takes under legal process, as FDIC did here, is not a holder in due course.

However, according to 12 U.S.C. Section 1819,

"All suits of a civil nature at common law or in equity to which the [Federal Deposit Insurance] Corporation shall be a party shall be deemed to arise under the laws of the United States . . . ."

This statutory authority has been expressly affirmed by the courts. Deitrick v. Greaney, 309 U.S. 190, 60 S.Ct. 480, 84 L.Ed. 694; FDIC v. Rectenwall, 97 F.Supp. 273 (N.D.Indiana 1951); D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1941). In the *D'Oench* case, *supra,* which is directly in point, the maker of the note attempted to raise against FDIC the defenses of no consideration and of a promise by the bank that the note would never be called—the same defenses asserted here. The Supreme Court held that the maker was estopped from raising those defenses against FDIC because he had acted in contravention of "a general policy to prevent the institution of banking from such secret agreements." Nor is guilty knowledge a prerequisite to liability. The *D'Oench* Court quoted with approval from Mount Vernon Trust Co. v. Bergoff, 272 N.Y. 192, 196, 5 N.E.2d 196, 197, in which the bank itself was allowed to recover against the maker:

"The defendant may not have intended to deceive any person, but, when she executed and delivered to the plaintiff bank an instrument in the form of a note, she was chargeable with knowledge that, for the accommodation of the bank, she was aiding the bank to conceal the actual transaction. Public policy requires that a person who, for the accommodation of the bank executes an instrument which is in form a binding obligation, should be estopped from thereafter asserting that simultaneously the parties agreed that the instrument should not be enforced." 315 U.S. at 459, 62 S.Ct. at 680.

The Court therefore has determined as follows:

That plaintiff Federal Deposit Insurance Corporation is the owner of the note in question;

That said note is a valid obligation of defendant Johnny Vineyard;

That the defenses raised by Vineyard are not available against FDIC;

That no payments have been made on either the principal or interest of said note, and there is presently owing the unpaid principal amount of $85,176.67 plus interest at the rate of 10% per annum plus 10% of the principal and interest due thereon as attorney's fees for collection;

That the proceeds of said promissory note were used to pay Vineyard's check of December 14, 1967, drawn on the Lorenzo State Bank and payable to Insurance Company of North America.

The question has been raised as to the effect of a judgment which FDIC has taken in a suit against Aetna Casualty & Surety Company as surety for A. W. Lott to recover the funds misapplied by Lott as a part of this same transaction. It is the opinion of this Court that the adjudication of rights between FDIC and Aetna in no way alters the legal obligation owed by Vineyard. The fact that FDIC was able to recover on a surety bond does not relieve Vineyard from the responsibility of having signed a valid promissory note. The effect a judgment against Vineyard may have on Aetna's liability to FDIC is strictly between those two parties and is no concern of Vineyard's. In the event of satisfaction or partial satisfaction by Aetna of the judgment against it, this Court will readjust the equities among the three parties. In no way will FDIC be allowed a double recovery of the funds involved in these two lawsuits.

Attorney for plaintiff will submit a form of judgment in accordance with the above for the principal amount of the note, interest and attorney's fees provided for therein.