**FEDERAL DEPOSIT INSURANCE CORPORATION, Receiver of State Bank of Prairie City, Prairie City, Iowa, Appellant,**

v.

**Robert OEHLERT, Appellee.**

No. 2–57794.

Supreme Court of Iowa.

April 20, 1977.

Korf, Diehl, Clayton & Cleverly, by John N. Diehl, Ben C. Clayton, and R. Eugene Knopf, Newton, for appellant.

Bertroche, Watson & Swanson and Robert L. Oeth, Des Moines, for appellee.

Heard by MOORE, C. J., and MASON, UHLENHOPP, HARRIS and McCORMICK, JJ.

UHLENHOPP, Justice.

This appeal involves the liability to the Federal Deposit Insurance Corporation (FDIC) of a person on his promises to pay loans by a bank to borrowers who had already borrowed to their limits.

Eugene Schneider owned two truck lines called Payne and United, which were corporations. He and the truck lines had borrowed from State Bank of Prairie City to their limits but needed still additional funds. The idea was conceived of selling debentures of Payne to the public, in the total amount of $250,000. Defendant Robert Oehlert and Clayton Blue would undertake to sell the debentures in denominations of $10,000 each. State Bank would finance debenture buyers.

Meantime Schneider needed current funds to keep his truck lines going—$100,000 for Payne and $40,000 for United. Since Schneider and his lines could not borrow, Oehlert signed two notes to State Bank in connection with the Payne line, and the bank made the notes for $65,000 and $35,000 respectively and advanced the funds. Some of this money went to Payne directly and some went to Schneider on a debt of Payne. Schneider was also in trouble with transportation authorities because of regulations prohibiting ownership of two truck lines by one person. Therefore Schneider ostensibly transferred United to Oehlert in a paper transaction, and State Bank lent United $40,000 on United's note guaranteed in writing by Oehlert.

Oehlert testified that he personally got none of the total of $140,000 thus lent by State Bank, and for the purpose of decision we accept this testimony as true. He also testified that when he signed the notes and guarantee the banker at State Bank told him he would not have to pay these debts, Schneider or the truck lines would pay them or they would by paid out of debenture proceeds, but the bank could lend no further to those debtors. Some of the testimony of the banker tends to corroborate Oehlert's testimony, and we will also assume this testimony of Oehlert is true for

the purpose of decision. In addition, we will assume as true that the banker made the assurances fraudulently, that is, he knew his assurances were false that Oehlert would not be looked to for payment. On the other hand, Oehlert knew that he himself was not the recipient of the loans and he knew that his name and credit were being used on the paper because the principal debtors had exhausted their credit.

Events did not work out as hoped, the bubble burst, and State Bank became insolvent. Plaintiff FDIC, which had insured State Bank's deposits, was appointed receiver of the bank.

Among the receivership assets were Oehlert's two notes and guarantee. FDIC sued Oehlert on them for the full amounts less a payment of $1200. Oehlert pleaded no consideration and fraudulent promises by the banker that Oehlert would not be looked to for payment. Over FDIC's objection and motion for directed verdict, the trial court submitted to the jury this defense of fraudulent promises by the banker. The jury found for Oehlert, and FDIC appealed.

■ I. Federal law governs FDIC's rights here. *D'Oench, Duhme & Co., Inc. v. FDIC*, 315 U.S. 447, 456, 62 S.Ct. 676, 679, 86 L.Ed. 956, 961 ("we are of the view that the liability of petitioner on the note involves decision of a federal not a state question"); *FDIC v. Vineyard*, 346 F.Supp. 489 (N.D.Tex.). See also *FDIC v. Meo*, 505 F.2d 790 n. 4 (9 Cir.). Hence pre-FDIC Iowa decisions are not controlling. See *Crum v. Emmett*, 197 Iowa 1160, 196 N.W. 982. Congress has provided an exception to application of federal law in the fourth paragraph of 12 U.S.C. § 1819 (in an action in which FDIC is a party as a receiver and "which involves only the rights or obligations of depositors, creditors, stockholders, and such State bank under State law"). The exception is not controlling here for two reasons: first, cases of the present kind involve the right of FDIC itself not to be misled, not merely the rights of "depositors, creditors, stockholders, and such State bank," and second, under the pronounce-

ment in *D'Oench*, FDIC's rights here do not arise "under State law."

II. Two basic situations may exist, one in which a banker perpetrates a fraud on a person, and the other in which a banker and a person perpetrate a fraud on the bank's creditors, depositors, and examiners and FDIC. An illustration of the former situation is *FDIC v. Meo*, 505 F.2d 790, 792 (9 Cir.). Meo made his note to a bank to purchase common stock in the bank. Unknown to Meo, the bank sold him voting trust certificates. The bank closed, and FDIC took over and sought to enforce the note. The Court of Appeals held that the defense of failure of consideration on account of the bank's wrong was available against the bank and also against its receiver, FDIC, stating:

Appellant [Meo] was a bona fide purchaser-borrower; he did not enter into any scheme or secret agreement whereby the assets of the bank would be overstated; he was wholly innocent of the wrongful action of SFNB [bank] in issuing voting trust certificates instead of common stock shares; he was not negligent in failing to discover the manner in which the stock order was actually executed; and most importantly, appellant had no knowledge whatsoever of the failure of consideration until after the bank was closed and appellee instituted this suit.

■ Decisions involving the latter situation—mutual conduct of the banker and the maker or guarantor of notes—are the parent case of *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956, and *FDIC v. Alker*, 151 F.2d 907 (3 Cir.); *FDIC v. Vineyard*, 346 F.Supp. 489 (N.D.Tex.); *Rainey v. Jackson*, 126 Cal.App. 723, 14 P.2d 1025; *FDIC v. Wainer*, 4 Ill.App.2d 233, 124 N.E.2d 29; and *FDIC v. Motorlease, Inc.*, 56 Misc.2d 306, 288 N.Y.S.2d 356. See also *Deitrick v. Greaney*, 309 U.S. 190, 60 S.Ct. 480, 84 L.Ed. 694; Anno. 64 A.L.R. 595. The essence of the *D'Oench* line of decisions is that when a person joins with a bank in creating paper which is ostensibly valid, he will not be heard to say against depositors, creditors, examiners, FDIC, or receivers

that the paper is not valid, notwithstanding absence of consideration, assurances of non-liability, or fraud. The ostensible debtor is in pari delicto by his very act of aiding in misleading others.

In *D'Oench* the maker of the note received a receipt therefor from the bank stating, "This note is given with the understanding it will not be called for payment. All interest payments to be repaid." The Court expressed the rationale of the maker's liability thus after referring to federal statutes:

"These provisions reveal a federal policy to protect respondent [FDIC] and the public funds which it administers against misrepresentations as to the securities or other assets in the portfolios of the banks which respondent insures or to which it makes loans. If petitioner [maker of note] and the bank had arranged to use the note for the express purpose of deceiving respondent on insurance of the bank or on the making of the loan, the case would be on all fours with *Deitrick v. Greaney*, supra. In that case the defendant for the purpose of concealing a national bank's acquisition of its own stock had the shares held by a straw man and executed a note to the bank, it being agreed that the shares were to be held for the bank and that he was not to be liable on the note. We held as a matter of federal law, based on the policy of the National Banking Act to prevent the impairment of a bank's capital resources by prohibiting such acquisitions, that the defendant could not rely on his own wrongful act to defeat the obligation of the note as against the receiver of the bank. The defendant's act was itself a violation of the statute. 309 U.S. p. 198, 60 S.Ct. 480, 84 L.Ed. 694. But the reach of the rule which prevents an accommodation maker of a note from setting up the defense of no consideration against a bank or its receiver or creditors is not delimited to those instances where he has committed a statutory offense. As indicated by the cases cited in the *Deitrick* case 309 U.S. p. 198, 60 S.Ct. [480] p. 484, 84 L.Ed. 694, an accommodation maker is not allowed that defense as against the receiver of the bank and its creditors, or at times even as against the bank itself, where his act contravenes a general policy to protect the institution of banking from such secret agreements. In some of those cases the accommodation maker was party to the scheme of deception in the sense that he had full knowledge of the intended use of the paper. *Putnam v. Chase*, 106 Or. 440, 212 P. 365; *Vallely v. Devaney*, 49 N.D. 1107, 194 N.W. 903; *Niblack v. Farley*, 286 Ill. 536, 122 N.E. 160; *Cedar State Bank v. Olson*, 116 Kan. 320, 226 P. 995; *Bay Parkway Nat. Bank v. Shalom*, 270 N.Y. 172, 200 N.E. 685; *German-American Finance Corp. v. Merchants & M. State Bank*, 177 Minn. 529, 225 N.W. 891, 64 A.L.R. 582. In others he had "no positive idea of committing any fraud upon any one." *Denny v. Fishter*, 238 Ky. 127, 129, 36 S.W.2d 864; *Iglehart v. Todd*, 203 Ind. 427, 442, 178 N.E. 685; *Mt. Vernon Trust Co. v. Bergoff*, 272 N.Y. 192, 5 N.E.2d 196. And see *Pauly v. O'Brien* C.C., 69 F. 460; Williston, Contracts (Rev.Ed.) § 1632. Yet he has not been allowed to escape liability on the note as against the receiver even though he was "very ignorant and ill-informed of the character of the transaction." *Rinaldi v. Young*, 67 App. D.C. 305, 92 F.2d 229, 231. Indeed, recovery was allowed by the bank itself in *Mt. Vernon Trust Co. v. Bergoff*, supra, where the court said (272 N.Y. p. 196, 5 N.E.2d [196] p. 197): "The defendant may not have intended to deceive any person, but when she executed and delivered to the plaintiff bank an instrument in the form of a note, she was chargeable with knowledge that, for the accommodation of the bank, she was aiding the bank to conceal the actual transaction. Public policy requires that a person who, for the accommodation of the bank executes an instrument which is in form a binding obligation, should be estopped from thereafter asserting that simultaneously the parties agreed that the instrument should not be enforced."

Furthermore, the fact that creditors may not have been deceived or specifically injured is irrelevant. As we held in the *Deitrick* case (309 U.S. p. 198, 60 S.Ct. 480, 84 L.Ed. 699) it is the "evil tendency" of the acts to contravene the policy governing banking transactions which lies at the root of the rule. See 7 Zollman, Banks & Banking (1936) § 4783. 315 U.S. 457–459, 62 S.Ct. 679–680, 86 L.Ed. 962–963.

Similar expressions will be found in the other cited cases. The court stated the reason for the rule thus in *Rainey v. Jackson*, 126 Cal.App. 723, 727, 14 P.2d 1025, 1027:

> The fundamental reason for the application of the equitable doctrine of estoppel to a situation such as is here presented is because the accommodation maker joins in the perpetration of a scheme which is essentially deceitful. He may do so unwittingly. Nevertheless, the certain effect produced by his action in making the note without consideration and delivering it to the bank is that the bank's assets are ostensibly increased. This ostensible increase is, from the viewpoint of the accommodation maker, purely fictitious.

See also 1A Corbin, Contracts, § 197 at 200 (1963); 1 Williston, Contracts, § 139 at 604–606 (3rd ed.); 11 Am.Jur.2d Bills & Notes § 243 at 271; 10 C.J.S. Bills & Notes § 485g at 1060.

III. The facts of the present case bring it squarely within the *D'Oench* line of decisions. By Oehlert's own testimony on the stand he established beyond any question that he knew he was using his name and credit to create ostensibly valid paper in the bank. If Oehlert could effectively defend under these circumstances on the ground that the banker acted fraudulently, Oehlert could nullify *D'Oench*. But that decision presupposes the banker may have acted wrongfully.

Under the present facts and as against FDIC, we will not hear Oehlert say he received no consideration or was promised nonliability or was defrauded. The trial court should have sustained FDIC's motion for directed verdict at the close of the evidence. We return the case to district court for entry of judgment in FDIC's favor for the principal sum of the three notes less $1200 paid, together with interest and costs.

REVERSED AND REMANDED.